EDWARD BELL, Appellee, *vs.* THE TOLUCA COAL COMPANY, Appellant.

*Opinion filed April 20, 1916.*

1. PRACTICE—*affidavit for continuance because of amendment of the declaration should state the facts.* An affidavit by the defendant for a continuance after the court has permitted additional counts to be filed on the trial should set out the facts from which the court can see that by reason of the amendment the defendant is unprepared for trial.

2. SAME—*allowance of amendments and granting of time to opposite party are within sound discretion of court.* The allowance of amendments of the pleadings during the trial and the granting or refusal of time to prepare an affidavit for a continuance on account of such amendments are matters within the sound discretion of the trial court, and a court of review will not interfere unless there has been an abuse of such discretion.

3. SAME—*when party cannot complain of the admission of irrelevant evidence.* Evidence which is relevant when admitted but which becomes irrelevant by reason of the dismissal of the counts of the declaration under which it was admitted may be stricken out on motion of the defendant or the defendant may have an instruction given directing the jury to disregard it, but in the absence of any motion or request for the instruction the defendant will not be heard to complain that the evidence is not properly in the record.

4. EVIDENCE—*when expert opinion as to whether condition was safe or unsafe cannot be received.* Where all the facts showing the conditions at the place where an injury occurred in a mine are testified to by a witness and made intelligible to the jury, it is

proper to refuse to allow him to testify that he found no condition which, as mine examiner, he deemed it advisable to report as unsafe, as it is for the jury to say, from the facts testified to, whether such conditions were safe or unsafe.

5. MASTER AND SERVANT—*effect where employer elects not to come under the Workmen's Compensation act.* An employer who elects not to come under the Workmen's Compensation act cannot escape liability for injuries sustained by an employee on the ground that the employee assumed the risk or that his injury or death was proximately caused by his own negligence.

6. INSTRUCTIONS—*when instructions are properly refused.* Instructions which have no basis in the allegations or evidence or which are substantially covered by other instructions which are given are properly refused.

APPEAL from the Circuit Court of Marshall county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

BOYS, OSBORN & GRIGGS, for appellant.

FRANK J. QUINN, and SHELTON McGRATH, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

June 23, 1913, appellee was injured while in the employ of the appellant corporation as a mule driver, engaged in hauling coal cars in and about its mine. Some of the counts in the declaration were based upon the Workmen's Compensation act of 1911. The trial court held this act unconstitutional on the ground that it had not been legally passed by the legislature, and the trial then proceeded without reference to said act. The jury found for appellee and assessed his damages at $3951, and judgment was entered on the verdict. The case having been appealed to the Appellate Court, the appellee assigned cross-errors raising the question as to whether the ruling of the trial court was correct in holding the said act unconstitutional. Thereupon the cause was transferred to this court before any decisions of this court holding this act constitutional were published. Since then,

however, this court has decided the act constitutional as to the method of its passage by the legislature. *Frey* v. *Kerens-Donnewald Coal Co.* 271 Ill. 121; *Dragovich* v. *Iroquois Iron Co.* 269 id. 478; *Devine* v. *Delano, ante,* p. 166.

The appellant's mine is located at Toluca, in Marshall county. The entries of the mine radiate from the shaft over a mile in all directions. The coal is hauled by mules from where it is being mined for a quarter to a half mile and then conveyed to the foot of the shaft by electric motors and lifted by steam power to the surface. The entries are named by the direction they take. Appellee's work was in the fourth right entry off of the second southeast entry, this latter leading to the shaft. The vein of coal is about three feet thick. The overlying rock is taken out for a sufficient height to make a passage for the mules. As the coal is mined the spaces left are filled in with rock or stone taken from the roof and elsewhere, which is piled in such a way as to make solid sides for the entry. The contour of the floor of the passageways or entries is not uniform, some parts being rather steep and other parts practically level. The fourth right entry is for the most part level, the steepest grade not being over three feet in one hundred. This grade, however, was sufficient to require the spragging of cars at certain points as the loaded cars were taken out. The distance between the rails and the roof varies but is usually from five to six feet. The distance between the side walls averages about eight feet. The rails of the track are three feet apart, leaving about two and a half feet between each rail and its nearest wall. The rocks used in walling up the sides of the entries are not uniform in size, the largest being a foot and a half long and from eight to ten inches wide. The cars were seven feet long, two and a half feet high from the rails to the top of the box, and overhung the rails about six inches on each side. Opening into this fourth right entry were several rooms. Room 4 on the left-hand side was about four hundred and fifty feet

from the junction of this entry with the second southeast entry. Room 5 was on the same side and about sixty feet away. In this entry were several slight curves, none of which were over ten degrees in a distance of twenty-five feet, and there was a curve near these two rooms which turned to the right at room 4. From where the coal was mined to these rooms there was a grade, which ended at room 4. From that point on to the southeast entry the grade was up. The testimony on the part of appellee was to the effect that near the curve at rooms 4 and 5, on the left side, on which the mule driver sits, the side of the entry was from a foot to two feet from the rail, and up towards the roof of the entry the side walls left a narrower space between them; that at one place in the upper part of the left-hand side of the entry a rock projected, so that it was necessary for a driver riding on the car to lower his head in going around this curve under it; that the highest point of the roof at this point was about five and a half feet. There was some testimony on the part of appellee to the effect that this condition of the entry had been reported to the mine manager or assistant mine manager a month or more before the accident. The record shows that some of the roof had fallen and had been cleared away, but the testimony of appellee was that there was one projecting rock remaining. There was no sign marking any place of danger near said rooms 4 and 5. On the contrary, the inspection report of the mine examiner for that portion of the mine indicated that it was "O. K." The man who laid the track at this curve testified that he did not have a rail-bender with which to make the rails join properly for a curve, and that the straight rails coming together made a kind of jog. These rails had been laid some time before the accident but had remained in the same condition up to that time. This same witness testified that the projecting rock came half way across and over the track, being thicker at the side and narrowing as it extended toward the center

of the track; that it had been in that same position for two months before the accident; that the distance from the center of the arch of the roof to the rail was about six feet, the clearance under the rock perpendicular to the right rail was about four feet and the distance from the right-hand rail to the side was fourteen inches; that the curve was about twenty feet from room 4. Some of appellant's witnesses testified that there was no projecting rock, but one of its witnesses testified he had seen it there. There was also a conflict in the testimony as to the distance between the coal car and the side of the entry and the distance between the rail and the roof on the side the driver sat; also as to whether the condition of the rails at the curve was safe. The testimony on behalf of appellant was to the effect that there was no dangerous condition at this point that had ever been reported.

On the day of the accident appellee started with a loaded car about 1:15 P. M. from some point above room 5. He had spragged the right front wheel. He was sitting on the left-hand side of the car, driving a mule. Where he sat the coal did not come above the body of the car. On the other parts of the car the coal was piled eighteen inches above the top. Another man rode on the rear of the car. The accident occurred four or five feet above the curve, as the car was going out toward the second southeast entry. Appellee testified that the day of the accident was the first time he had been instructed to drive a mule in this entry for a full day but that he had made trips there previously. On this trip, some distance above the point of the accident, he noticed his car was going too fast. He flashed his light on the curve and testified that he thought the rate of speed was such that the car would either jump the track or run into the side of the entry, and that he started to get off the car at the front end to slow it or steady it over that point; that he had one foot on the bumper in front and the other foot pitched forward and attempted to get off. His

hands were on the front end of the car and he stepped forward, and as he raised himself was struck on the head and fell in front of the car and rolled around and then lost consciousness. When he came to he was lying close to the left-hand side, on the inside of the rail, and the car had gone by. Locamper, the man on the rear of the car, testified that at the time of the accident he saw appellee's light disappear, and that he got off the rear end and then saw appellee being dragged between the car and the side of the entry; that witness then tried to stop the car and it only ran a short distance; that the appellee was dragged about twenty feet and was lying with his head to the inside; that the car had not run over him but that he had rolled back on the track; that the witness then went for help. A witness for appellant reached the place of the accident about the same time. He testified that he found appellee about twenty feet from room 4, between the rails; that the loaded car was a little further along. There was no dispute as to how the accident happened, except that appellant contends there was no projecting rock at this point and the testimony as to certain distances is not in accord. Appellee suffered fractures of the pelvic and other bones in that region, which injuries the doctors testified would be of a permanent nature. In addition to the fractures he also received injuries affecting the bladder, stomach and kidneys, for which he has been treated.

The original declaration consisted of five counts. A demurrer was sustained to the fourth and fifth counts, and thereafter amended fourth and fifth counts and a sixth additional count were filed. After most of the witnesses for appellant had been heard, appellee dismissed his first, second, fourth and fifth counts and moved for permission to file three additional counts, numbered 7, 8 and 9. Leave was granted to file Nos. 8 and 9 but denied as to No. 7. The case went to the jury on the third original and the sixth, eighth and ninth additional counts. The third origi-

nal and sixth additional counts charged that appellant was not operating under the Workmen's Compensation act of 1911. These counts also charged that a rock was projecting two feet into said entry at a height of four feet and two inches above the rail; that the rail was laid within eighteen inches from the side of the entry and the end of the rock extended over said rail, and that it was a dangerous place for appellee to work; that it had existed for a week, and appellant knew, or by the exercise of ordinary care should have known, of such dangerous condition but carelessly and negligently allowed it to so remain, and that appellee, while in the exercise of due care, undertook to pass said place, was struck by the extending rock, thrown from the car and injured.

When appellee secured permission, during the trial, to file additional counts the appellant asked for a continuance, on the ground of surprise, until nine o'clock the following morning. The court refused this motion and required counsel to plead at once. Section 42 of chapter 110 provides that no amendment shall be cause for continuance unless the party affected files an affidavit that he is unprepared. Our statute on amendments permitted the filing of the amended counts. The affidavit for continuance was on information and belief, and stated that appellant was not prepared to proceed with the trial on account of the lack of evidence to meet the cause of action set out in count 9 but not stating what evidence it could produce. The affidavit should state facts from which the court can see·that by reason of the amendment the defendant is unprepared for trial. (*Mills* v. *Bland,* 76 Ill. 381.) Furthermore, counsel argue that the ninth count for the first time charges as negligence "an unsafe place to work." The third count charged the same thing in effect. The ninth count in most respects was a revision of the sixth count, except that instead of alleging that the curve and condition of the track made a dangerous place, it alleged that the portion of the entry,

with the rock projecting at the upper part, was an unsafe
place and in a dangerous condition. There was nothing in
the ninth count which would require other or different evi-
dence from what would be required by the third and sixth
additional counts. The allowance of an amendment to the
pleadings during the trial is a matter of discretion with the
court, (*Gordon* v. *Reynolds,* 114 Ill. 118; *Booth* v. *Wiley,*
102 id. 84;) as well as the granting or refusing of time
to prepare an affidavit for a continuance on account of such
amendment, and the ruling of the court cannot be assigned
for error unless the discretion has been abused. (*Knicker-
bocker Ins. Co.* v. *McGinnis,* 87 Ill. 70; *Fisher* v. *Greene,*
95 id. 94.) On this record the court did not err in refus-
ing to permit a continuance.

Counsel further argue that the court erred in the admis-
sion and exclusion of evidence. One of appellee's witnesses
was asked if he had ever seen coal cars run off the track at
the curve, and he was permitted to answer, over objection,
that he had. This testimony, it is contended, was errone-
ous because there was no unsafe condition of the track al-
leged. At the time this evidence was introduced more than
one of the counts charged as negligence a defect in the track
at this curve, and this evidence was admitted by the court
on the theory that it tended to prove the allegations in these
counts. Appellant afterward, before motions were made to
dismiss these counts, offered to show that the curve or con-
dition of the track at this point was not dangerous. There-
after counsel for the appellee dismissed as to these counts.
Counsel for appellant, if they had seen fit, could have had
this evidence stricken out. Evidence relevant when received
but which afterward becomes irrelevant may be stricken out
on motion of the party it may affect. (12 Ency. of Evi-
dence, 162; see, also, *Greenup* v. *Stoker,* 2 Gilm. 688.)
Appellant could also have asked for an instruction direct-
ing the jury to disregard the evidence which only tended to
support the counts so dismissed. Having failed to make a

motion to strike out the evidence or to ask for an instruction to disregard it, appellant cannot now complain.

Counsel further argue that the court erred in refusing to admit the testimony of two witnesses. Appellant asked these witnesses certain questions as to whether they were shown the place where the accident occurred. Objections were sustained to the questions in the form as asked, and properly so, because they were leading. But the localities which were being inquired into were shown in the evidence, and it appears that these two witnesses testified with reference to these places. Counsel for appellant, in this connection, argue that the court erred in not permitting one of the witnesses to prove that as mine examiner he had examined the mine at the places pointed out and found no conditions which he thought necessary to report as being unsafe. This witness testified what conditions he found in the mine, and the court only refused to allow him to give his opinion as to the advisability of making a report, as mine examiner, as to such conditions. His opinion on this point was immaterial. It was for the jury to say, from the facts testified to, whether the places and conditions were safe or dangerous. Where all the facts can be ascertained and made intelligible to the jury, as they could on these questions, expert opinions as to whether such conditions were safe or unsafe should not be received in evidence. *Yarber* v. *Chicago and Alton Railway Co.* 235 Ill. 589; *Keefe* v. *Armour & Co.* 258 id. 28; *Hoffman* v. *Tosetti Brewing Co.* 257 id. 185.

Counsel for appellant argue that the giving of the sixth instruction for appellee was error, because it stated, among other things, that if the jury found the issues for the plaintiff, and "find that the plaintiff has sustained damages as charged in the declaration or any count thereof," then they could estimate the damages in a certain manner. The argument is that the third original count was defective and there could be no recovery under it. Counsel, however, concede

in their briefs that if the Workmen's Compensation act was constitutional there could be recovery under this count. The act being constitutional, the argument of counsel on this point is without merit.

· Counsel further argue that the thirty-fifth instruction should have been given, which stated that, in effect, there was no statute prescribing the height or width of entries in coal mines. There were no allegations in the declaration or evidence relied on for a recovery on which to base this instruction. It was therefore properly refused.

Counsel further insist that the court erred in refusing its thirty-sixth instruction, which stated, among other things, that the appellee must prove that he was in the exercise of ordinary care and was not guilty of negligence. The proof shows that appellant elected not to come under the Workmen's Compensation act of 1911, and therefore, that act being constitutional, appellant cannot escape liability for injuries sustained by an employee because of the employee's assuming the risk or because the injury or death was proximately caused by contributory negligence of the employee. (*Devine* v. *Delano, supra.*) Other instructions were given, however, for appellant which practically covered all these points. Appellant therefore had this case tried on the question of assumed risk and contributory negligence as if the act were unconstitutional, and therefore, in a manner, more favorable to its interests than under the law it was entitled to. The trial court did not err in refusing this instruction.

Appellant further insists that the peremptory instruction asked should have been given,—that the verdict was contrary to the evidence. We think the evidence was sufficient to sustain this verdict and that no error of law was committed that injuriously affected the interests of appellant.

The judgment of the circuit court will therefore be affirmed.                                          *Judgment affirmed.*