VINCENT BLAZINA, Plaintiff-Appellee, *v.* ROBERTA BLAZINA, Defendant-Appellant.

Second District (2nd Division)   No. 76-36

Opinion filed October 1, 1976.

James A. Brandvik, of Jacobson & Brandvik, of Chicago, for appellant.

Stephen J. Culliton, of Civinelli, Bakalis, Keller & Culliton, of Bloomingdale, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is a divorce case originally filed on behalf of the husband Vincent Blazina charging that the wife Roberta Blazina was guilty of habitual drunkenness and extreme and repeated acts of mental cruelty. The wife answered and counterclaimed. Immediately prior to the introduction of evidence, the husband was permitted to withdraw his complaint. No answer or other pleading was filed in response to the countercomplaint and the case was tried on the allegations of the countercomplaint alone. The circuit court of Du Page County granted the wife a divorce, awarded custody of the minor child of the parties to the wife but gave liberal visitation privileges to the husband. The court divided certain personal

property of the parties, awarded $30 per week child support and $30 per week alimony and ordered a sale of the marital home jointly owned by the parties. The wife appeals.

The issues presented for review are:

### 1

Did the court abuse its discretion in ordering the sale of the jointly owned marital home of the parties where no pleading requested the same? We find that it did and reverse this portion of the judgment.

### 2

Did the court err in refusing to admit evidence of the wife's special equities in the marital home and in denying her motion to amend her complaint to allege such special equities? We find that it did and reverse and remand this portion of the judgment with directions to allow her to amend her complaint and for further proceedings.

### 3

Did she receive a fair trial when the trial court; refused to allow an offer of proof; refused to permit argument on her behalf and denied admissibility of evidence of the consequences of the husband's abnormal behavior? We find no reversible error on this point and affirm.

### 4

Did the court act arbitrarily in granting liberal visitation privileges to the husband? We find no error on this issue and affirm this part of the judgment.

Vincent and Roberta Blazina were married on April 6, 1968. In December of 1968, they had their only child, Vincent D. Blazina, Jr. Mrs. Blazina had been married before and had one son, Billy, who lived with the parties during their marriage. Billy was 14 years old at the time of the trial of the case in September, 1975. He was never adopted by Vincent Blazina.

Counterplaintiff described how her husband had struck her on various occasions. He had given her a black eye and, on one occasion, hit her on the side of the head and broke her eardrum. She also testified that he was drunk every night since they were married.

Before the marriage, the parties had agreed that Mrs. Blazina was to contribute $4,000 of her funds, plus other amounts, for the purchase of a building. The court denied this evidence and also refused to permit the counterplaintiff to amend her countercomplaint to conform to the proof. The court then denied counsel for counterplaintiff the opportunity to make an offer of proof as to the particulars of this financial arrangement.

The court would not permit argument on this issue.

The parties used the proceeds of the sale of the first building that they had purchased to buy their existing marital home in Addison, Illinois. The court ruled this evidence inadmissible.

Vincent Blazina had left the marital home in January, 1975. Thirty days before the trial of the case (September 26, 1975) he moved back into the home. Since he came back to the house, the relationship between the parties was terrible and Roberta believed that her safety required that he be evicted from the home. The court denied evidence on this issue, and denied counsel for counterplaintiff the right to make an offer of proof.

When questioned about the relationship between her husband and her first son Billy, Roberta Blazina described how he was very mean to Billy and beat him up, breaking his arm on one occasion. She then described how about two years before the trial, when Billy was 12 years old, her husband became very·affectionate toward Billy. He would go into his room with his underclothes on and "stroke" the child. He would be drunk on these occasions. When Mrs. Blazina had to go to the hospital, her son was sexually molested by her husband. This had been admitted by the husband. No evidence was offered denying these events. When Mrs. Blazina attempted to describe the hospitalization of Billy, which resulted from these events, the court ruled this evidence inadmissible. In addition, Mr. Blazina was drunk every night since the parties were married. The court questioned Mrs. Blazina about the visitation of her husband with their 6½-year-old son, Vincent; she testified that there was no trouble with this visitation other than once when the child became ill and threw up.

During the period of the separation of the parties, Mr. Blazina paid his wife $40 per week for the support of Vincent, Jr. He also paid the mortgage on the house of $386 per month. He paid the utility bills of approximately $70 per month. This was done on a salary from Blazina Service Station of $154 per week take home pay.

Counsel for Mrs. Blazina argued that Mr. Blazina's visitation under the decree should be under controlled circumstances because of the problems in his background. The court granted weekend and vacation visitation.

The court ordered the marital home of the parties sold. Mrs. Blazina was granted temporary possession of the home and her husband was ordered to continue the mortgage payments, receiving ·credit on the reduction of principal therefrom. At sale, the proceeds were to be divided equally.

## I

■■ Neither party hereto prayed for a partition or for a sale of the jointly owned marital home. This court's holding in *Nugent v. Nugent*, 9

Ill. App. 3d 702, clearly outlined the circumstances under which a trial court can order a sale of a jointly owned marital home. There is no authority to order such a sale except as provided by statute. (*Fowler v. Fowler*, 26 Ill. App. 3d 313, 315; *Persico v. Persico*, 409 Ill. 608, 611.) Since the *Nugent* case was not reported in full we quote extensively:

> "We find no basis for the court's order of sale of the jointly held property here. Section 20 of the Divorce Act (Ill. Rev. Stat. 1969, ch. 40, par. 21) is inapplicable as it authorizes a sale only to enforce the payment of alimony where it is decreed to be a lien on the property. Nor can the sale be classified as the conveyance of equitable title from one party to another under Section 17 (Ill. Rev. Stat. 1969, ch. 40, par. 18) or the conveyance of property as a settlement in lieu of alimony under Section 18 (Ill. Rev. Stat. 1969, ch. 40, par. 19). Rather, the ordering of the sale under the circumstances here was in the nature of a partition (Ill. Rev. Stat. 1969, ch. 40, par. 17(a)). However, neither party prayed for a partition of the property and each claimed the entire interest in it. The court was therefore without jurisdiction to order the sale of this property. This provision of the decree is reversed."

■■ The husband contends that because he alleged in his complaint, the joint ownership of the marital residence and prayed that he be awarded his share of said property the matter was before the court. But he was allowed to withdraw his complaint. Ordinarily the withdrawal of a pleading removes it from consideration, and leaves the issues in the same status as though the withdrawn pleading had never been filed. (30 Ill. L. & Pr. *Pleading* §172 (1957); 71 C.J.S. *Pleading* §419d (1951).) The withdrawal of a complaint does not preclude the court from holding the cause for adjudication on cross actions set up by defendant. 71 C.J.S. *Pleading*, at 856 (1951); 24 Am. Jur. 2d *Dismissal, Discontinuance, and Nonsuit* §74 (1966).

We find no basis for the court's order of sale of the marital residence. This provision of the judgment is reversed.

## II

■■ It is imperative that a party claiming special equities plead with specificity allegations of the equities that, if proven would allow the court to order a conveyance or impress a lien on the property in the amount of the equitable ownership. No such relief can be granted by the court where there are no allegations of such special circumstances and equities. *Persico v. Persico*, 409 Ill. 608, 610; *Everett v. Everett*, 25 Ill. 2d 342, 346; see Neumark, Property Rights in Divorce, 62 Ill. B. J. 242, 246 (1974); 16A Ill. L. & Pr. *Divorce* §184 (1971).

The wife concedes there was a total failure herein to allege facts showing special equities in her complaint but contends that she should have been allowed to amend her complaint while she was testifying.

■■ Provision for the amendment of pleadings is made in section 46 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 46) and in the statute of amendments and jeofails (Ill. Rev. Stat. 1973, ch. 7, par. 1 *et seq.*). These provisions are liberally construed and applied to carry out. their purpose of permitting liberal amendments to pleadings. (*Williams v. Fredenhagen*, 350 Ill. App. 26.) But it cannot be emphasized too strongly that the motion to amend is addressed to the sound discretion of the trial judge. (*Bell v. Toluca Coal Co.*, 272 Ill. 576; *Bowman v. County of Lake*, 29 Ill. 2d 268.) Counsel must keep in mind that

1. He has no absolute right to amend. *Bowman*, at 281.

2. The amendment may result in costs being assessed against him.

3. The amendment may prompt opposing counsel to seek and obtain, a continuance of the trial on the ground that he is unprepared to proceed. (Supreme Court Rule 231(d).)

Nevertheless the greatest liberality should be applied in allowing amendments. (*Jilek v. Missouri Pacific R.R. Co.*, 13 Ill. App. 2d 518; *Goshey v. Dunlap*, 16 Ill. App. 3d 29, 32.) The most important question is whether the amendment will be in furtherance of justice.

■■ Once a trial has begun we also have the rule that an amendment should not ordinarily be permitted to set up matters of which the pleader had full knowledge at the time of interposing the original pleading and no excuse is presented for not putting its substance in the original pleading. (*County of Winnebago v. Cannell*, 376 Ill. 277, 282, *Mundt v. Ragnar Benson, Inc.*, 18 Ill. App. 3d 758, 768; *Friestedt v. Chicago Transit Authority*, 129 Ill. App. 2d 153, 156.) This is particularly true where the amendment is prejudicial or would alter the nature and quality of proof required to defend. *Ennis v. Illinois State Bank*, 111 Ill. App. 2d 71, 78.

■■ In the instant case the wife had full knowledge of all the facts at the time of her original countercomplaint. She presented no valid excuse for not putting its substance into the original. Prompt and immediate objection was made and sustained as to any testimony regarding a special equity. (See *Benson v. Benson*, 26 Ill. App. 3d 50.) There was no waiver of the issue. (*Fowler v. Fowler*, 26 Ill. App. 3d 313, 316.) An amendment would alter the nature and quality of proof required to defend.

But is justice served here by denying leave to amend? It appears from the testimony ordered stricken that the wife may have a special equity to the extent of $4000 in the marital home. Doubts should be resolved in favor of allowing amendments.

Part of the problem is that many members of the bar are unaware that: "In order to obtain an award of property under the theory that one's client has special equities, one must properly allege in the Complaint sufficient facts that if sustained by the evidence would entitle the client to the award. Further, the complaint must specifically pray for the relief and request that one party be directed to convey title to the other." See Illinois Family Law, 11 Sec. 3C.4.

■■ The greatest factor militating against letting the wife amend her pleadings at this point is the fact that the knowledge of the special equities was available to her when her complaint was filed. However, the defendant here was also in possession of all the facts relating to special equities at all relevant times (although granted his attorney may not have been). The impact of this is that the prejudice to defendant is not as severe as it would be in a case where the parties are unrelated. Although the nature and quality of proof required to defend would differ, the defendant here would not have to do any additional investigation to adequately defend. He would merely have to inform his attorney of the facts already known to him. Therefore because the prejudice to defendant, in allowing plaintiff to amend her pleadings at this late stage, is minimal, the overriding principles of the furtherance of justice and the liberal construction of section 46 of the Civil Practice Act compel us to find that the court abused its discretion in refusing to allow the amendment.

### III

The wife contended that her safety required that Blazina be evicted from the home. The trial court refused to allow evidence on this matter and denied counsel the right to make an offer of proof.

■■ Where an offer of proof is necessary, it is error for the trial court to refuse an opportunity to counsel to state what he proposes to prove by the evidence offered. 88 C.J.S. *Trial* §73 (1955); 75 Am. Jur. 2d *Trial* §128 (1974); *Fidelity & Casualty Co. v. Weise,* 80 Ill. App. 499, 513; *In re Estate of Undziakiewicz,* 54 Ill. App. 2d 382, 385.

Section 23 of the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, par. 21.4) permits one spouse to have sole possession of the marital home during the pendency of the proceedings where there is on file "a verified complaint or verified petition seeking temporary eviction, the court may, during the pendency of the proceeding, only in cases where the physical or mental well being of either spouse or their children is jeopardized * * *."

■■ The countercomplaint herein did not pray for an order barring the husband from the home. If the wife was seeking relief under this section

she did not properly invoke it by either a verified complaint or a verified petition. See *Hoda v. Hoda*, 122 Ill. App. 2d 283, 288.

## IV

The wife contends that the husband should not have been awarded "liberal visitation"[1] with the 6½-year-old son of the parties.

■■ The welfare and best interests of the child is the paramount consideration in determining whether visitation rights should be restricted and visitation rights will not be restricted merely because the custodial parent considers such restriction to be advisable.

Courts are reluctant to restrict such rights; such reluctance is based on a recognition of the parental feelings of a divorced spouse who has not been granted custody or on the theory that restriction should be limited to cases where extraordinary circumstances are present or where the unfitness of the parent being denied is clearly shown. Broad discretion must be vested in the trial court (*Rodely v. Rodely*, 28 Ill. 2d 347, 350; *Aud v. Etienne*, 47 Ill. 2d 110), and the right should not be denied unless the court is convinced that the visitations are detrimental to the best interests of the child. The estrangement of parent and child should be avoided whenever possible. *Berger v. Berger*, 344 Ill. App. 557; 27B C.J.S. *Divorce* §312 (1959).

The evidence here shows that about a year before the divorce the husband, while drunk "sexually molested" Billy the wife's son by a former marriage. There is no evidence of any bad conduct toward his own son. In fact during the 7 or 8 months when the parties were separated the husband had the child for the whole weekend on alternate weeks and for a week summer vacation (to conform to his work schedule). The wife testified that she had made no objection to this practice and that no problems were experienced as a result thereof.

The order of the trial judge here did no more than continue the practice as worked out by the parties. The past conduct and character of the father fails to inspire any degree of confidence, but the trial judge had the best opportunity to observe the parties and their conduct and demeanor while testifying. This is a vital factor in evaluating the correctness of his determination. Under the circumstances where no harm to the child was to be apprehended from allowing him to go with his father we cannot say that the trial court abused its broad discretion. If the privilege given by

---

[1]The courts are not in complete agreement as to the use of terminology in this area. Most courts speak of visitation rights, the right to see one's child, or "access" to the child in the same sense, meaning not only the bare right to visit and see the child at its home (that is, the home of the custodial parent), but also the right to take the child from that home for several hours, or for a weekend, or even for a longer vacation period. See Annot., 88 A.L.R. 2d 148, 153 (1963).

168

the order is abused or the interests of the child injuriously affected, it can be changed at any time.

Reversed in part; reversed and remanded with directions, in part; affirmed in all other respects.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.