FLOYD ADAMS *et al.*, Plaintiffs-Appellees, *v.* BOARD OF EDUCATION OF RIVERTON COMMUNITY UNIT SCHOOL DISTRICT NO. 14 OF SANGAMON COUNTY, Defendant-Appellant.

Fourth District   No. 15570

Opinion filed December 19, 1979.

Sorling, Northrup, Hanna, Cullen and Cochran, Ltd., of Springfield (Richard E. Hart, of counsel), for appellant.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant, acting as business agent for 14 school districts composing the Capital Area Vocational Center (CAVC), appeals from the trial court's judgment declaring the rights of 21 teachers at the CAVC and awarding them $37,555.46 in damages. Plaintiffs, 21 teachers at the CAVC, filed their complaint for declaratory and monetary relief on January 27, 1978. The plaintiffs sought a declaration of their rights under a joint agreement that had been entered into in July 1975 by the 14 school districts; the joint agreement established the CAVC.

Formerly, all the plaintiffs were employed by Springfield District No. 186 and taught at that district's vocational center. One important function of the joint agreement was to provide for the transfer of the teachers from the Springfield district to the newly created CAVC; related to this was the problem of ensuring that compensation in the new CAVC be at least equal to what a transferring teacher would have received had he stayed in the Springfield system. Article III, section 3, of the joint agreement provides:

> "Upon request to the EXECUTIVE COUNCIL, through the Director, staff members of the present Area Vocational Center shall be transferred and employed by the Administrative Agent for programs which are to be continued. Such transfers and employment shall not be construed as to be an interruption of continued contractual service (tenure). Salaries and fringe benefits for such transferred staff members shall be equivalent to that which would have been received under continuation of the present Area Vocational Center for the year of transition. * * * "

The 1977-78 school year is the year of transition referred to in the agreement. When the plaintiffs were employed by District No. 186, their school day lasted 7¼ hours. The CAVC lengthened the day to eight hours. Both figures include a 30-minute period for lunch. The plaintiffs contend that the section of the joint agreement requiring "equivalent" salaries and fringe benefits entitles them to extra pay for the 45 minutes by which the length of the CAVC school day exceeds the length of the Springfield school day.

The defendant theorizes that "salary," unlike "wages," is unrelated to

the number of hours worked; the joint agreement therefore merely requires that the yearly compensation for transferred teachers be equal to or greater than what they would have received had they remained in the Springfield district.

In its judgment order the trial court found that the plaintiffs are third-party beneficiaries of the joint agreement, that the phrase "salaries and fringe benefits," as used in the joint agreement, depends on the length of the school day, and that because the CAVC day was longer, salaries were not equivalent to the Springfield rates. The court awarded each teacher a *pro rata* amount proportionate to his salary for the extra 45 minutes. We affirm the trial court's decision.

■■ The evidence admitted at trial strongly supports the conclusion that the increase in the length of the school day required proportionate increases in each teacher's pay. Each teacher signed an individual contract with the CAVC; the contracts set out the teacher's daily rate of pay, which is multiplied by 20 and then added to the base salary to give an adjusted salary, reflecting the 20 days by which the CAVC school year exceeds the 180-day Springfield school year. The CAVC therefore was well aware that differences between their schedule and the Springfield schedule required that adjustments be made to keep "salaries and fringe benefits" equivalent. Several officers and directors of the CAVC conceded, for example, that doubling the length of the school day would require some sort of adjustment in these otherwise immutable salaries. The defendant does not explain why a 45-minute increase does not require an adjustment in salary, while an eight-hour increase would require an adjustment. Lines must be drawn, of course, but they may as well be drawn at the 7¼-hour mark, the length of the Springfield school day. In fact, that is where the joint agreement drew the line.

■■ One final practice of the CAVC supports the result reached in this case. One teacher who had to leave work one-half hour early had his pay reduced proportionately: he was paid "93.3330 percent of full time." A half hour is one-sixteenth, or 6.25 percent, of an eight-hour day; thus it would appear that this teacher's pay should be 93.75 percent of full time. It is inconsistent to reduce income when the work day is reduced, and then to argue that an increase in the work day does not compel an increase in the income, *i.e.*, salary. The CAVC was quick to reduce pay even when the teacher was still working longer than he would have in the Springfield system. The CAVC would have the length of the day be elastic only when it is increased.

■■ ■ Three weeks after the end of the trial, the defendant moved, pursuant to section 46 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46), to conform its pleadings to the proof; the defendant wanted to add the affirmative defense that the teachers had waived any rights

under the joint agreement by signing their individual contracts, which stated annual pay unadjusted for the lengthened day, after learning that the CAVC school day would be an extra 45 minutes long. The trial court's denial of this motion was proper. Although the individual contracts were admitted into evidence, the question of waiver raises factual issues that were not argued before the court. Although section 46 is construed liberally, courts will not permit amendments when the movant should have known of the matter at the time he submitted his original pleading and the point to be added would require different proofs. (*Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164.) In this case, the defendant presented no evidence showing that the plaintiffs had effectively waived their rights under the joint agreement; the individual contracts merely suggested the existence of this issue. The defendant's motion was made too late and was properly denied.

Affirmed.

MILLS, P. J., and GREEN, J., concur.