EVELYN BRIDGEMAN, Special Adm'r of the Estate of Charles Bridgeman, Deceased, Plaintiff-Appellee, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Defendant-Appellant.

Fifth District No. 5—88—0491

Opinion filed March 16, 1990.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Richard M. Roessler and Thomas R. Peters, of counsel), for appellant.

Brennan, Cates & Constance, P.C., of Belleville (Rosemary D. McGuire, of counsel), for appellee.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Terminal Railroad Association of St. Louis (TRRA), appeals from the judgment entered in favor of plaintiff, Evelyn Bridgeman, as special administrator of the estate of Charles Bridgeman, deceased, after a jury trial in the circuit court of Madison County, awarding her $300,000 in damages under the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.* (1982)) in connection with the death of her husband. We affirm.

According to the evidence presented at trial, on June 2, 1979, Charles Bridgeman, a switchman for TRRA, reported to work for the 8 a.m. shift. He informed the foreman of his crew, Francis Kelley, he was not feeling well. Kelley asked Bridgeman if he wished to go home to which Bridgeman replied, "No." Kelley instructed Bridgeman to ride the engine. At approximately noon, the crew arrived at TRRA's yard at Omaha and 16th Street in Granite City and stopped for clearance. Kelley walked into a nearby shanty to call the yardmaster. Bridgeman followed him into the shanty and sat down on a bench. Another switchman, Ponce DeLeon Williams, also entered the shanty to use the latrine. When he came out of the latrine, Bridgeman was lying down on the bench. Kelley subsequently tapped Bridgeman on the leg and told him they were about to leave. Bridgeman stated he did not feel well. Kelley left Bridgeman lying on the bench and went back to the engine. Williams returned to the shanty a few minutes later. At this point, Bridgeman was in the latrine. Williams left and returned again a short time later, but Bridgeman was still in the bathroom. While waiting on the bench to use the latrine, Williams heard Bridgeman coughing and clearing his throat. Bridgeman then called out to get the foreman. Williams left to inform Kelley that Bridgeman was asking for him. Kelley returned to the shanty and called out to Bridgeman. Bridgeman did not respond. Kelley then left to get his engineer. The two returned to the shanty and again called out to Bridgeman. When Bridgeman still did not answer, they opened the bathroom door. They found Bridgeman slumped against the wall. He appeared not to be breathing and was pale, cold and wet. They checked for a pulse and found none. At approximately 12:15, Kelley called the yardmaster, stating that Bridgeman needed an ambulance. Kelley overheard the yardmaster pick up another line and speak to an unidentified person requesting an ambulance. Because no ambulance responded, Kelley called the yardmaster

an additional three or four times requesting help. The ambulance arrived some 45 minutes later. The ambulance report reflected the call for assistance was not received until 1 p.m. The evidence at trial also revealed the closest ambulance unit was approximately eight blocks away from the yard at 16th and Omaha, and St. Elizabeth's Trauma Center was approximately one minute away. The engineer, contrary to the other crew members, testified the ambulance arrived shortly after being called. Bridgeman was pronounced dead at the scene at approximately 1:25. Death was caused by acute myocardial infarction. The autopsy revealed Bridgeman had severe obstructive coronary artery disease and was alive for a minimum of 30 minutes from the onset of the attack until death.

TRRA raises seven issues on appeal, namely: (1) whether plaintiff failed to plead and prove a duty recognized by the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 *et seq.* (1982)), failed to prove TRRA was negligent and failed to prove that any negligence on the part of TRRA caused plaintiff's damages; (2) whether the trial court erred in allowing plaintiff to file during trial a second amended complaint alleging new theories of liability; (3) whether the trial court erred in precluding witnesses who discovered Bridgeman from testifying as to whether he was dead when found; (4) whether the court incorrectly instructed the jury on the issues; (5) whether the trial court incorrectly instructed the jury on the method for determining pecuniary losses; (6) whether the court erred in giving over TRRA's objection plaintiff's instruction defining "proximate cause"; and (7) whether the verdict is excessive and unwarranted by the evidence. We address these issues in the order stated.

TRRA's first argument in condensed form is that plaintiff failed to allege and prove a submissible case. TRRA contends no duty exists under the FELA to render medical aid and, more importantly, plaintiff failed to demonstrate with reasonable certainty that TRRA's acts caused the injury because Bridgeman was already dead when discovered. Negligence, according to TRRA, is not established simply by proving an employee died at work.

■■ Under the Federal Employer's Liability Act,

"[e]very common carrier by railroad *** shall be liable in damages to any person suffering injury while he is employed by such carrier *** for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." (45 U.S.C. §51 (1982).)

In plain language, the statute imposes liability on the railroad for death resulting *in whole or in part* from the negligence of any of its

officers, agents or employees. (See *Randall v. Reading Co.* (M.D. Penn. 1972), 344 F. Supp. 879, 881-82.) Using liberal construction to fulfill the purposes of the Act, courts have permitted recovery in instances when railroad employees suffer fatal heart attacks during their tours of duty or have been stricken with sudden illness on the job, rendering them helpless to secure aid on their own, and die because of the railroad's failure to exercise due care in furnishing emergency medical assistance after it learned or should have learned of their plight. (*Randall*, 344 F. Supp. at 882. See also *Lancaster v. Norfolk & Western Ry.* (7th Cir. 1985), 773 F.2d 807, 819; Annot., 64 A.L.R.2d 1108 (1959).) Clearly, TRRA had a duty to help Bridgeman once it was aware of the need. Kelley recognized the emergency situation at 12:15 and called for help. There was evidence from some of the crew members, however, that help was not summoned for some 45 minutes. Both medical experts who testified at trial stated that the sooner a patient suffering a myocardial infarction received life-sustaining treatment, the better the chances were for survival and that not receiving any aid for such a lengthy period of time doomed Bridgeman with medical certainty. Clearly, plaintiff stated and proved sufficient allegations and evidence to make a submissible case as to the duty to act and the negligence of the railroad. It is true there was conflicting evidence as to what time Bridgeman became ill and what time the ambulance was called. Such discrepancies, however, are for the jury to resolve. (See, *e.g., Clay v. Brodsky* (1986), 148 Ill. App. 3d 63, 71, 499 N.E.2d 68, 74.) The jury heard testimony pertaining to Bridgeman's condition when discovered by his fellow crew members. The jury also heard testimony from the medical experts explaining how Bridgeman was alive for at least 30 minutes to an hour from the beginning of his heart attack to death and how individuals with no ascertainable pulse can be saved by prompt medical attention. We cannot say mere conjecture or speculation forms the basis of the judgment here. (See *Walling v. Lingelbach* (1975), 33 Ill. App. 3d 949, 952, 338 N.E.2d 917, 919, *aff'd* (1976), 65 Ill. 2d 244, 357 N.E.2d 530. See also *Potter v. Edgar* (1975), 34 Ill. App. 3d 33, 36, 339 N.E.2d 321, 324.) There simply is no evidence on the record before us so overwhelmingly against the jury's verdict as to require reversal in this instance. See *Randall*, 344 F. Supp. 879. See also *Clay*, 148 Ill. App. 3d at 70-71, 499 N.E.2d at 73-74; *Murphy v. Chestnut Mountain Lodge, Inc.* (1984), 124 Ill. App. 3d 508, 512, 464 N.E.2d 818, 821-22.

 █ TRRA argues, however, in connection with this issue, that plaintiff's medical expert, in response to an improper hypothetical

question, testified the "hypothetical man" could have been saved if he had received prompt medical attention. TRRA asserts the hypothetical question failed to reveal nearly every critical fact concerning Bridgeman's condition when found and that all relevant material undisputed facts must be included in a hypothetical for the answer to go beyond mere speculation. (See *Ryan v. Blakey* (1979), 71 Ill. App. 3d 339, 350, 389 N.E.2d 604, 612; *Pritchett v. Steinker Trucking Co.* (1969), 108 Ill. App. 2d 371, 376-77, 247 N.E.2d 923, 926.) TRRA did make an objection at trial to plaintiff's hypothetical on the grounds the question called for speculation. But, TRRA did not specifically mention the lack of alleged critical facts, thereby precluding any chance for correction or supplementation. More importantly, however, a hypothetical question is not improper merely because it includes only a part of the facts in evidence. (See *Graham v. St. Luke's Hospital* (1964), 46 Ill. App. 2d 147, 155, 196 N.E.2d 355, 359.) Any additional or contrary information could have been explored on cross-examination simply by varying the original hypothesis. Finally, even if the hypothetical question were deemed improper, it would not mandate reversal in this instance. The jury was more than adequately made aware of Bridgeman's condition when found in addition to being advised of medical science's ability today to resuscitate those who appear to be dead.

TRRA next argues the trial court erred in permitting plaintiff to file, during the middle of the trial, a second amended complaint which TRRA believes alleged new theories of liability. According to TRRA, plaintiff's first amended complaint was based on the theory that TRRA was negligent in requiring Bridgeman to perform his work when it knew or should have known he had heart disease, while the second amended complaint added allegations that TRRA negligently failed to provide or obtain emergency medical aid for Bridgeman.

In general, the granting or denying of leave to amend a complaint prior to judgment is a matter within the sound discretion of the trial court, and its decision will not be disturbed on appeal unless there is an abuse of that discretion. (See, *e.g., Adams v. Zayre Corp.* (1986), 148 Ill. App. 3d 704, 709, 499 N.E.2d 678, 683; *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 165, 356 N.E.2d 164, 169.) Additionally, the provisions of section 2—616 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—616) are to be liberally construed and applied to carry out their purpose of permitting amendments to pleadings; the key question being whether the amendment will be in the furtherance of justice. (See *Blazina*, 42 Ill. App. 3d at

165, 356 N.E.2d at 169. See also *North Shore Marine, Inc. v. Engel* (1980), 81 Ill. App. 3d 530, 533, 401 N.E.2d 269, 272.) While it is also true that ordinarily an amendment which alters the nature and quality of proof required to defend or which is prejudicial should not be allowed as to matters of which the pleader had full knowledge at the time of filing the original pleading if no excuse is presented for not putting its substance in the original pleading (see *Biundo v. Christ Community Hospital* (1982), 104 Ill. App. 3d 670, 675, 432 N.E.2d 1293, 1297; *North Shore*, 81 Ill. App. 3d at 533, 401 N.E.2d at 272), any doubts should be resolved in favor of allowing amendments (see *Blazina*, 42 Ill. App. 3d at 165, 356 N.E.2d at 169). Here, any prejudice to TRRA was minimal, while the overriding principles of furtherance of justice and liberal construction were substantial. TRRA cannot claim surprise at the "new" allegations contained in plaintiffs' second amended complaint; it too explored on discovery whether the failure of anyone to assist Bridgeman when found had any effect on his ability to survive the myocardial infarction. One of TRRA's primary defenses was that Bridgeman, given his cardiovascular history, would have died anyway regardless of its acts or omissions. The allegations in plaintiff's second amended complaint arose out of the same incident and the same facts. The "new" allegations served to elaborate on those already pleaded. We find no abuse of the trial court's discretion in this instance in allowing the second amended complaint to stand. If TRRA were truly surprised, it easily could have requested a continuance to conduct further discovery on the time issue. Instead, it chose to proceed. We cannot fault the trial court for refusing to grant a request never presented to it.

TRRA next finds fault with the trial court's refusal to allow two of the crewmen who were present when Bridgeman was found in the latrine to testify whether Bridgeman was dead at the time discovered. The trial court precluded such testimony on the basis it required a medical conclusion, something a lay person was not qualified to render. The court did allow, however, each witness to describe in detail exactly what he observed as to Bridgeman's condition when discovered. In addition, the trial court allowed the testimony of one witness who, when asked to relate his observations, testified he first thought Bridgeman was dead, to stand as an instantaneous impression. Again, we find no error in the trial court's rulings. The court simply prohibited lay testimony requiring a medical conclusion but did allow each witness to relate a graphic and detailed picture of their observations. There was no prejudice. TRRA was able to present everything it wanted to the jury except a conclusion which

the witnesses were not qualified to give. While there is authority that lay persons may give such an opinion under certain circumstances (see *Prudential Insurance Co. v. Spain* (1950), 339 Ill. App. 476, 482-83, 90 N.E.2d 256, 259), under the facts of this case, specifically in light of the medical testimony rendered, the trial court committed no error in prohibiting lay opinion testimony here.

 For its fourth argument on appeal, TRRA contends the trial court incorrectly instructed the jury on the issues involved in the case. TRRA believes the instruction improperly implied to the jury TRRA had duties which are not imposed upon a railroad under FELA, namely, the duty to render emergency medical assistance. TRRA also argues there was insufficient evidence to show that had emergency aid been given, Bridgeman's life would have been saved or that it even failed to obtain such aid. These contentions have already been addressed through TRRA's first three arguments. Suffice it to say there was a duty and there was sufficient evidence to support all the allegations submitted to the jury. TRRA fails to acknowledge that a plaintiff in a FELA case can get to the jury with even the slightest evidence of negligence. *Lancaster*, 773 F.2d at 820. See also *Randall*, 344 F. Supp. at 883.

 TRRA's fifth issue on appeal also pertains to the jury instructions. This time TRRA contends the trial court incorrectly instructed the jury on the method of determining plaintiff's losses. We first note TRRA failed to preserve this issue for appeal by not including it in its post-trial motion. Secondly, every element of damage on which the jury was instructed had been presented to the jury through witness testimony or physical evidence. We find no error and decline to address the matter further.

 ██ TRRA's final contention with respect to jury instructions centers on plaintiff's instruction, given over TRRA's objection, defining proximate cause as "that cause which played any part, even the slightest, in producing the injury complained of." The language of the instruction, however, is a proper statement of proximate cause under the FELA and is supported by case law. (See *Blyzes v. Midwest Towing Co.* (1969), 109 Ill. App. 2d 48, 57-58, 248 N.E.2d 305, 309-10. See also *Page v. St. Louis Southwestern Ry.* (5th Cir. 1963), 312 F.2d 84, 91-92; *DeLima v. Trinidad Corp.* (2d Cir. 1962), 302 F.2d 585, 588.) The United States Supreme Court has stated clearly that the employee's burden of proof in a FELA case is met when the employee has shown any evidence from which the jury could infer the negligence of the defendant employer played any part, however small, in the injury or death. (*Rogers v. Missouri Pacific R.R. Co.*

(1957), 352 U.S. 500, 506-08, 1 L. Ed. 2d 493, 499-500, 77 S. Ct. 443, 448-49.) The instruction here appropriately conveyed to the jury that the negligence of TRRA need not be the sole or only cause of the injury. It did not bind or require the jury to find anything; it only defined the parameters of what the jury was entitled to find. (*Cf. Bertrand v. Southern Pacific Co.* (9th Cir. 1960), 282 F.2d 569, 573.) As the instruction complied with the intent of Congress to hold the employer liable for that injury for which it is wholly or partly responsible, however slight (*Rogers*, 352 U.S. at 507-08, 1 L. Ed. 2d at 500, 77 S. Ct. at 449), we find no error in the giving of the instruction or any possible misleading of the jury.

■■■ As its final argument on appeal, TRRA asserts the verdict of the jury was excessive, unreasonable and unwarranted by the evidence and therefore the result of prejudice, sympathy and passion. We find no merit to this contention. Nothing was presented to the jury at trial or in closing argument to arouse the passions and prejudices of the jury. More importantly, the record clearly supports the jury's verdict. The ascertainment and assessment of damages are primarily questions of fact peculiarly within the province of the jury to determine. We will not substitute our judgment for that of the jury as to the amount to be awarded in any given case. (*Blyzes*, 109 Ill. App. 2d at 55, 248 N.E.2d at 308-09. See also *Clay*, 148 Ill. App. 3d at 76, 499 N.E.2d at 77.) The award here is not so excessive or large, falling outside the necessarily flexible limits of fair and reasonable compensation, as to shock the judicial conscience.

For the aforementioned reasons, we affirm the judgment of the circuit court of Madison County.

Affirmed.

WELCH and CHAPMAN, JJ., concur.