CRAWLER Judge.
Jesse J. Pulley, -a railroad worker, appeals from a summary judgment entered in favor of his employer, Norfolk Southern Railway Company, Inc., on a suit he had filed against it under the Federal Employers’ Liability Act (“FELA”), 45 U.S.C. §§ 51-60 (1982). Pulley originally filed his complaint in the Jefferson Circuit Court. On Norfolk Southern’s motion, the action was transferred to the Mobile Circuit Court.[1] In his complaint Pulley alleged that Norfolk had failed to furnish him a reasonably safe place in which to work and that he had suffered a heart attack as a result of that negligence and that Norfolk negligently had failed to respond in a timely and appropriate manner to his medical emergency, thus causing him to suffer additional heart damage. The trial court entered a summary judgment in favor of Norfolk. We reverse and remand.
Pulley is a qualified, experienced, Fair-mont Spiker machine operator for Norfolk Southern Railway.[2] On the day before November 8,1994, Pulley had worked a 14-hour day on the Fairmont-Spiker machine, fixing and replacing hoses and fixing anvils. On November 8, 1994, one of the trained Spiker operators was out with back problems, and the crew was short one Spiker operator. The foreman directed an inexperienced worker to run the side of the Spiker opposite from the side Pulley was operating. Pulley informed the foreman that he did not believe the man was qualified to operate the machine and that he could not be responsible if someone was injured as a result of an unqualified person’s working the machine. The foreman replied: “That’s all we’ve got.” The unqualified worker flipped a switch that caused hot hydraulic oil to shoot from a hose. The worker was hit with the hot oil; then Pulley was hit with the hot oil. The supervisor subsequently began screaming at the crew to get the machine off the track because a train was coming. Pulley explained that he panicked at this point, *1011 that he approached the machine from behind in an attempt to cut it off, but the machine had no cut-off valve, and that the oil spewing from the machine was growing hotter and hotter by the moment. Finally a mechanic arrived with a plug. Pulley had to hoist himself up on the machine, remove the hose, screw in a fitting, and insert the plug into the fitting to stop the flow of hot oil.
At the time he plugged the fitting and stopped the flow of oil, Pulley felt a sharp pain traveling across his chest. He became short of breath and within minutes collapsed with chest pain. Pulley then located another machine operator who assisted him to the nearest crossing. When Pulley reached the crossing, he told Travis Johnson, the division engineer, that he was having severe chest pain and said that he needed to go to the hospital. Johnson instructed him to sit down by a ditch. After 30 minutes, Pulley was no longer able to sit; he could only lie flat in the ditch. Johnson put Pulley in an automobile with the air conditioner running and called someone to take him to the hospital. A man named Jerry Buggs arrived with a truck and took Pulley to a hospital in Jackson. The crossing was located in Sar-aland, and Mobile Infirmary would have been a much closer hospital facility. Pulley spent the night in the Jackson hospital and was transferred the following day to Mobile Infirmary where he underwent open-heart surgery.
In opposition to Norfolk’s motion for a summary judgment, Pulley submitted a portion of his deposition, excerpts from the deposition of Dr. Norman Stevens, the emergency-room physician at Jackson Hospital, as well as excerpts from the deposition of Dr. Carl Maltese, the cardiac surgeon who performed bypass surgery on Pulley at Mobile Infirmary. In his deposition, Pulley testified that pursuant to Norfolk’s policies and procedures he had received 91 days of training before he was allowed to operate the Fairmont Spiker. He explained that, by allowing an unqualified person to operate such powerful and complex machinery, Norfolk had placed the safety of many workers in jeopardy. He further stated that if Norfolk had followed its own rules and procedures the November 8, 1994, incident would never have happened. Both Dr. Stevens and Dr. Maltese testified that Pulley would not have suffered a heart attack, even in the presence of the stressful work conditions of November 8, 1994, had he not been predisposed to cardiac problems by virtue of his history of obesity, smoking, drinking, and high cholesterol. However, they also testified that the stress he suffered that day probably contributed to his heart attack. ■ Dr. Maltese testified that it was his opinion that, had Norfolk promptly transported Pulley to Mobile Infirmary, where he could have received immediate treatment after the event, the health-care professionals at that facility might have been able to lessen the heart attack and reduce the resulting damage to Pulley’s heart.
On January 9, 2000, without stating the reasons therefor, the trial court entered a summary judgment in favor of Norfolk. Because the amount in controversy exceeded the jurisdictional limitation of this court, Pulley appealed to the supreme court. The supreme court transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
A party is entitled to a summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), Ala. R. Civ. P. “Our standard of review in cases involving summary judgments is de novo.” Lee v. Burdette, 715 So.2d 804, 806 (Ala.Civ.App.1998). “In re *1012 viewing the disposition of a motion for [a] summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact” and whether the movant “is entitled to a judgment as a matter of law.” Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c)(3), Ala. R. Civ. P. “[I]f the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden ... shifts to the non-movant; ... the non-movant must show ‘substantial evidence’ in support of his position.” Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 798 (Ala.1989). Evidence is “substantial” if it is “of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Our review is further subject to the caveat that this court must review the record in a light that is most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).
Section 51 of FELA provides that “[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employers of such carrier.” 45 U.S.C. § 51. “To prevail in a FELA action, the plaintiff must prove the traditional elements of negligence: duty, breach of duty, foreseeability, and causation.” Lyles v. Alabama State Docks Terminal Ry., 730 So.2d 123, 124 (Ala.1998).
This court has stated:
“What constitutes negligence in a FELA action is governed by federal law and does not vary according to state law. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Southern, Ry. v. Roberts, 380 So.2d 774 (Ala.1979), overruled on other grounds by Tidball v. Orkin Exterminating Co., 583 So.2d 239 (Ala.1991).
Sweeney v. CSX Transp., Inc., 735 So.2d 472, 475 (Ala.Civ.App.1998), aff'd, 735 So.2d 476 (Ala.1999). The evidence must show that Norfolk was negligent, that Pulley was injured, and that his injury resulted in whole or in part from the negligence of any of Norfolk’s officers, agents or employees. 45 U.S.C. § 51 (1993); Lyles v. Alabama State Docks Terminal Ry., supra (plurality opinion) (in order to prevail in a FELA action the claimant must prove negligence, duty, breach of duty, foreseeability and causation).
In Hines v. Consolidated Rail Corp., 926 F.2d 262 (3d Cir.1989), the United States Court of Appeals for the Third Circuit provided the following historical backdrop for FELA:
“FELA was passed in 1908 in an effort to provide a tort compensation system for railroad workers who, at that time, experienced among the highest accident rates in United States history. Schwartz & Mahshigian, The Federal Employers’ Liability Act, a Bane for Workers, a Bust for Railroads, a Boon for Lawyers, 23 San Diego L.Rev. 1, 3 (1986). In a series of decisions starting with Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) and then followed, most notably by Gallick v. Baltimore & Ohio Railroad, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), the Supreme Court broadened FELA’s standards of fault and proximate cause. See Phillips, An Evaluation of the Federal Employ *1013 ers’ Liability Act, 25 San Diego L.Rev. 49, 51 (1988). In Rogers, the Court held that ‘the test of a [FELA] jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.’ Rogers, 352 U.S at 506, 77 S.Ct. at 448. Moreover, the Court held that it was irrelevant whether the jury could also “with reason, on grounds of probability, attribute the result to other causes including the employee’s contributory negligence.’ Id. (footnote omitted). Similarly, in Gallick, the Court stated that there can be a jury question of causation when there is ‘evidence that any employer negligence caused the harm, or, more precisely, enough to justify a jury’s determination that employer negligence had played any role in producing the harm.’ Gallick, 372 U.S. at 116, 83 S.Ct. at 664.
“Reasonable foreseeability of harm is an ‘essential ingredient’ of FELA cases. Gallick, 372 U.S. at 117, 83 S.Ct. at 665. However, the Gallick Court adopted a broad interpretation. The Court held that regardless of whether the railroad could have foreseen the employee’s injury (amputation of both legs) that appeared to result from an infectious insect bite, the jury’s finding that the railroad was negligent in maintaining a stagnant and infested pool of water that attracted insects was sufficient to satisfy the foreseeability requirement. Id. at 109-13, 83 S.Ct. at 661-63. In turn, the question of “whether or not the insect was from or had been attracted by the pool’ of stagnant water was answered by plaintiffs testimony that he had seen similar types of insects in the pool. Id. at 113, 83 S.Ct. at 663.
[[Image here]]
“Similarly, in Pehowic v. Erie Lackawanna R.R., 430 F.2d 697 (3d Cir.1970), we stated that a FELA plaintiff need only present a minimum amount of evidence in order to defeat a summary judgment. ‘[A] trial court is justified in withdrawing ... issue[s] from the jury’s consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee.’ Id. at 699-700. See also Eckert v. Aliquippa & Southern R.R., 828 F.2d 183, 187 (3d Cir.1987).... ”
926 F.2d at 267-68.
In Harbin v. Burlington Northern R.R., 921 F.2d 129 (7th Cir.1990), the United States Court of Appeals for the Seventh Circuit held that a worker who presented evidence that his on-the-job heart attack was caused partially or completely by his employer’s alleged negligence in not providing him a reasonably safe workplace— and who supported that claim with medical testimony that his strenuous work compounded by the additional stress placed upon his heart by the sooty atmosphere in the unventilated workplace precipitated his heart attack — presented sufficient evidence to send to a jury the issue of the railroad’s negligence in failing to provide a safe workplace.
Pulley claims that Norfolk’s failure to provide him a reasonably safe workplace contributed to cause his heart attack. In response, Norfolk argues that it could not reasonably have foreseen that Pulley was susceptible to a heart attack if placed under stress. However, Norfolk’s contention is flawed. Under the courts’ broad interpretation of “foreseeability of harm” in FELA actions, the foreseeability of the specific harm resulting from the negligence is • not required. It is sufficient if the employer could foresee general harm *1014 resulting from a certain negligent practice. Gallick v. Baltimore & Ohio R.R., 872 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963).
In addition, Norfolk argues that Pulley’s heart attack was caused by his hypertension, diabetes, obesity, and his history of smoking and drinking. Norfolk claims that whether the stressful work events of November 8, 1994, played a role in precipitating Pulley’s heart attack is purely speculative. During questioning at his deposition, Dr. Stevens was given a description of the events Pulley experienced at work on November 8, 1994, up until the time he plugged the hot oil fitting and felt the pain across his chest. Dr. Stevens was then asked to give his professional opinion as to whether those events could have contributed to Pulley’s heart attack. He replied: “I think those events in that moment obviously were somewhat stressful and certainly could be a contributing factor to the event.” When asked the same question during his deposition, Dr. Maltese replied: “I think it probably contribute^] to the acute event, to the heart-attack.” Dr; Maltese testified that it was his opinion, to a reasonable degree of medical certainty, that the stress to which Pulley was exposed on November 8, 1994, caused him to secrete adrenalin, which in turn caused his blood pressure to rise and his heart to work, harder, and which ultimately contributed to cause his heart attack. Taken in the light most favorable to Pulley, the testimony of Dr. Maltese and Dr. Stevens constitutes considerably more than speculation; in fact, Dr. Maltese testified “to a reasonable degree of medical certainty” that the stress of that day contributed to Pulley’s heart attack. We hold that Pulley demonstrated that there was a genuine issue of material fact as to whether Norfolk’s alleged negligence contributed to cause Pulley’s heart attack.
We conclude that Pulley presented substantial evidence that Norfolk breached its duty to him to maintain a reasonably safe workplace. Pulley testified in his deposition that Norfolk had promulgated rules and procedures requiring that only qualified operators operate the Fairmont Spik-er. He testified that he had trained with two qualified operators for 91 days before he was permitted to operate the machine. He presented evidence indicating that on November 8, 1994, Norfolk had allowed an unqualified worker to operate the Fair-mont Spiker and that the unqualified worker had accidentally disconnected a hydraulic hose, causing hot oil to spurt in all directions at the same time the machine needed to be immediately removed from the track to avoid a collision with an oncoming train. We conclude that Pulley presented substantial evidence to demonstrate that the stress to which he was subjected on November 8, 1994, contributed to his heart attack. In light of the foregoing, we conclude that the trial court erred in entering the summary judgment in favor of Norfolk on Pulley’s claim that Norfolk’s agent was negligent in assigning an untrained worker to fill a position on the Fairmont Spiker.
We turn now to Pulley’s claim that Norfolk’s delay in obtaining prompt medical treatment for his critical condition needlessly caused him to suffer additional damage to his heart. When an employee falls seriously ill at work, an employer owes a duty to furnish the employee with prompt emergency medical treatment. See Randall v. Reading Co., 344 F.Supp. 879 (M.D.Penn.1972). In order to recover on such a claim, the worker must establish that he became ill at work, that without prompt medical treatment he faced death or serious bodily harm, that the employer had notice of his illness, that the employer failed to furnish prompt medical attention, *1015 and that his death or injury resulted in whole or in part from the employer’s delay in response. Id. at 883. It is undisputed that Pulley experienced severe chest pains at work and that he gave notice of this to his supervisor. It is also undisputed that he was forced to sit by a ditch for half an hour and then in an automobile for another half an hour to await a ride in a truck to a distant rural emergency room, not equipped to manage his health-care crisis. Dr. Maltese was asked in his deposition whether Pulley’s residual heart damage resulted from Norfolk’s failure to furnish prompt medical attention. He responded:
“Let me say this: If he went to Jackson, they had no way of doing anything to help him there. If they [had] called an ambulance and they [had] taken him to the Infirmary, straight, they may have been able to modify his heart attack and result in less damage. So, I guess the answer is yes.”
Later in his deposition, when asked the same question, Dr. Maltese again stated, “I would say that’s true. The damage to his heart did result from not quick enough medical attention.” We conclude that Pulley presented substantial evidence sufficient to defeat Norfolk’s motion for a summary judgment on his claim of failure to provide prompt medical attention.
In light of the foregoing, we reverse the summary judgment. We remand the matter to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur.

. State and federal courts have concurrent jurisdiction to entertain FELA suits. 45 U.S.C. § 56. Ex parte Burlington Northern R.R., 470 So.2d 1094, 1096 (Ala.1985). See also Charles A. Wright et al., Federal Practice and Procedure, Jurisdiction 2d §§ 3526, 3527 (1984).

. The Fairmont Spiker is a machine that has to be operated by two persons. One operator is positioned over one rail of the railroad track and the other operator is positioned over the other rail of the track. The operators use the Fairmont Spiker to repair the track.