**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2795
_____

Z. MARCIA ABRAMSON, Executrix of the Estate of
Martin Abramson Deceased and
Z. Marcia Abramson, in her own right,
Appellant

v.

THE RITZ CARLTON HOTEL COMPANY, LLC,
t/a, d/b/a and also known as THE RITZ-CARLTON GOLF &
SPA RESORT, ROSE HALL, JAMAICA;
MARRIOT INTERNATIONAL, INC.;
THE RITZ-CARLTON GOLF & SPA RESORT,
ROSE HALL, JAMAICA;
AMERICAN EXPRESS TRAVEL RELATED SERVICES, INC.;
JOHN DOES 3 THROUGH 20;
THE RITZ CARLTON HOTEL COMPANY OF JAMAICA LIMITED;
ROSE HALL RESORT, L.P.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 09-cv-03264)
District Judge:  Honorable Joseph H. Rodriguez
_____

Submitted Under Third Circuit LAR 34.1(a)
April 17, 2012
_____

Before: VANASKIE, BARRY and CUDAHY,[*] Circuit Judges

---

[*]  Honorable Richard D. Cudahy, Senior Circuit Judge for the United States Court of
Appeals for the Seventh Circuit, sitting by designation.

_____

## OPINION

_____

BARRY, <u>Circuit Judge</u>

Plaintiff Z. Marcia Abramson, as executrix of her husband's estate and on her own behalf, brought this suit against the Ritz-Carlton Hotel Company and related parties (collectively, "Appellees"). Her claims arise from her husband's fatal heart attack while dining in a restaurant at the Ritz-Carlton Hotel & Spa ("Hotel") in Rose Hall, Jamaica. She asserts that the Hotel breached the duty of care owed to her husband by failing to properly maintain the medical equipment it provided during this emergency. The District Court granted Appellees' motion for summary judgment. We will affirm.

## I. BACKGROUND

On June 9, 2007, Mrs. Abramson and her husband Martin, who had a history of heart problems, were having dinner with family and friends at the Hotel when, sometime between 8:00 and 9:00 p.m., he went into cardiac arrest. Mrs. Abramson, a registered nurse certified in CPR, called out for help and attended to her husband. Nurse Resie Weaver and Doctor Eric Berkowitz (both of whom were hotel guests with Basic Life Support training) quickly responded, and the three began to perform CPR. At approximately 9:00 p.m., Mrs. Abramson asked a restaurant employee to call a doctor. The employee immediately informed the hostess, who called the Hotel's emergency

2

hotline. A loss prevention officer ("LPO") received the call and, at 9:05 p.m., sent a radio transmission asking on-duty LPOs to report to the restaurant. At 9:07 p.m., the LPO called MoBay Hope Medical Centre ("MoBay Hope") for an ambulance.

Two LPOs and Assistant Director of Loss Prevention Ricardo Daley arrived at the restaurant. Because Mr. Abramson was having difficulty breathing, one of the LPOs stayed with him while Mr. Daley left to get an oxygen tank and the other LPO left to get an automated external defibrillator ("AED"), both returning with the items minutes later. When the CPR and oxygen failed to help, AED shocks were administered. There is a dispute as to whether the oxygen tank and AED were functioning properly. According to Nurse Weaver and Dr. Berkowitz, the AED was functioning; Nurse Weaver testified that the oxygen tank was functioning as well. On the other hand, Mrs. Abramson and her cousin testified that the oxygen tank's gauge was on empty and that, because the AED was not charged, Mr. Abramson received only a "quiver" of a jolt. (App. 108, 368). For purposes of this appeal, we view this dispute in Mrs. Abramson's favor and assume that the equipment malfunctioned as described.

The ambulance arrived at the Hotel at 9:19 p.m. and took Mr. Abramson to MoBay Hope. Mrs. Abramson concedes that from the time of her husband's collapse until he was taken away by ambulance, "he had medical care being provided to him" by "[p]eople that were trained." (App. 94, 119, 307). Mr. Abramson was moved to another facility in Jamaica, and was then airlifted to a medical center in Florida, where he died on June 11, 2007. Mrs. Abramson's medical expert opined that if emergency personnel or functioning medical equipment had arrived at the Hotel sooner, Mr. Abramson may have

3

had at least a 50% chance of long-term survival.

Mrs. Abramson retained a hotel consulting expert who concluded that, considering the size of the Hotel, it was "inexcusable" to have only one oxygen tank and AED on hand. (App. 433). He also opined that it was customary for hotels to inspect and record the fitness of their emergency medical equipment. Mr. Daley testified that the Hotel inspected its medical emergency procedures and equipment, but no corroborating records were produced.

On June 5, 2009, Mrs. Abramson commenced this action in the Superior Court of New Jersey; it was then removed to the U.S. District Court for the District of New Jersey. She asserts various negligence and related state law claims predicated on the theory that the Hotel breached the duty of care owed to her husband, substantially increasing his risk of death. Appellees moved for summary judgment, and the District Court granted the motion, concluding that Mrs. Abramson had failed to raise a genuine dispute of material fact as to whether the Hotel breached its duty of care. According to the Court, the undisputed evidence showed that (1) the Hotel discharged its duty to summon medical help and, until help arrived, provide basic first aid, and (2) to the extent that the Hotel assumed a greater duty by providing further assistance, the New Jersey Good Samaritan Act immunized Appellees from liability. We will affirm.

## II.  ANALYSIS[1]

We review the grant of summary judgment *de novo*, applying the same standard as

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.

did the District Court. *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008). Viewing the facts in the light most favorable to the nonmovant and drawing all inferences in that party's favor, summary judgment is appropriate only if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Mrs. Abramson challenges the District Court's determination of (1) the scope of the duty that the Hotel owed her husband, and (2) the applicability of the Good Samaritan Law. Regarding the first issue, she argues that, in addition to summoning help, hotels have a duty to maintain in good working order basic medical equipment or, at least, the emergency equipment advertised to be kept on the premises. As for the second issue, she asserts that the Good Samaritan Law does not apply because the Hotel breached a preexisting duty—i.e., the duty that is the subject of the first issue.[2]

The District Court correctly determined that a hotel's duty to a guest in need is limited to summoning medical help and, until it arrives, providing basic first aid. The Hotel did not breach this duty because it indisputably called an ambulance immediately after Mrs. Abramson asked the staff for help, and Mr. Abramson received CPR from trained medical professionals while awaiting the ambulance. Moreover, to the extent that the Hotel incurred a heightened duty by providing an oxygen tank and AED, the Good Samaritan Act shields Appellees from any liability for negligence.

---

[2] Mrs. Abramson also argues that the Hotel had a preexisting statutory duty to maintain the AED in accordance with manufacturer's operational guidelines. N.J.S.A. §§ 2A:62A-25(b). Because she failed to raise this issue before the District Court, the record is undeveloped, and there is nothing for us to review.

5

**A. The Hotel's Limited Duty to Assist a Guest in Medical Need**

Under New Jersey law, which the parties agree governs, a plaintiff in a negligence action must show that the defendant breached a duty of reasonable care, causing injury. *Jerista v. Murray*, 883 A.2d 350, 360 (N.J. 2005). Generally, there is no duty to affirmatively assist an injured person unless a special relationship, such as that between an innkeeper and its guests, exists between the parties. *See State v. Lisa*, 919 A.2d 145, 158 (N.J. Super. App. Div. 2007); Restatement (Second) of Torts § 314A(2) (1965).

Although the Supreme Court of New Jersey has not defined the duty that a hotel owes a guest during a medical emergency, we predicted how it would do so in a case in which a patron of a casino suffered cardiac arrest. *Lundy v. Adamar of New Jersey*, 34 F.3d 1173 (3d Cir. 1994). In *Lundy*, the casino was equipped with an intubation kit but the on-duty nurse who responded did not bring it with her because she was not qualified to perform the intubation procedure; she did, however, bring oxygen, which was utilized. *Id.* at 1175. We predicted that the Supreme Court would adopt the standard of care set forth in the Restatement (Second) of Torts § 314A, which provides that an innkeeper is under a duty to its guests to "take reasonable action . . . to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." *Id.* at 1179. The commentary to § 314A states:

> The defendant . . . will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained.

Restatement (Second) of Torts § 314A, cmt. f. We thus concluded that an innkeeper

6

must only summon medical care when the need becomes apparent, and take reasonable first aid measures until medical care arrives. 34 F.3d at 1179; *see also id.* at 1178 (citing *Szabo v. Pa. Ry. Co.*, 40 A.2d 562 (N.J. 1945), in which the Supreme Court held that an employer has only a limited duty to obtain medical care for an injured employee when the injury renders the employee helpless). We stated that the duty clearly "does not extend to providing all medical care that the . . . innkeeper could reasonably foresee might be needed." *Id.* at 1179.

Here, there is no dispute that the Hotel secured medical care for Mr. Abramson minutes after Mrs. Abramson first asked its staff for help. Moreover, Mrs. Abramson concedes that her husband was assisted by trained medical professionals, including herself, from the moment of his collapse until he was taken away by ambulance. She attempts to distinguish *Lundy* by arguing that while intubation is well beyond basic first aid, an oxygen tank and AED are not. *Lundy*, she continues, rejects the notion that an innkeeper is "required to maintain all of the equipment a hospital would have, but supports the belief that basic essential equipment, such as an oxygen tank and defibrillator, are to be maintained and in good working order." (Appellant's Br. 17). She contends that, at a minimum, *Lundy* does not foreclose reading § 314A to impose a duty to maintain in good working order any medical equipment advertised to be located on the premises.[3]

*Lundy*'s reasoning clearly extends to this case, and a common understanding of

---

[3] Mrs. Abramson frames this argument in terms of § 314A's requirement of "reasonable action." We address it in terms of § 324 in Part II.B.

7

"first aid" does not encompass the use of an oxygen tank or AED any more than it encompasses an intubation kit. Rather, "first aid" involves simple procedures that can be performed with minimal equipment and training, such as bandaging and repositioning. CPR—which Mr. Abramson indisputably received—lies at the outer limit of the term. American Red Cross & American Heart Association, Guidelines for First Aid (2010), pt. 17 at S935, *available at* http://circ.ahajournals.org/content/122/18_suppl_3/S934.full.pdf +html (defining "first aid" as "the assessments and interventions that can be performed by a bystander (or by the victim) with minimal or no medical equipment" and concluding that "[t]here is insufficient evidence to recommend routine use of supplementary oxygen by a first aid provider"); *see also L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 559 (Fla. Dist. Ct. App. 2008) (holding that "first aid" does not include CPR or any other skilled treatment that requires training); *Salte v. YMCA of Metro. Chi. Found.*, 814 N.E.2d 610, 615 (Ill. App. Ct. 2004) (concluding that the use of a defibrillator was "far beyond the type of 'first aid' contemplated by" § 314A). Accordingly, there is no genuine dispute that the Hotel fulfilled its limited common law duty to summon help and, until help arrived, provide basic first aid.[4]

### B. Voluntary Undertaking to Provide Assistance

Mrs. Abramson argues that, even if the Hotel had no duty to provide a level of care that included a functioning oxygen tank and AED, it voluntarily assumed that duty,

---

[4] While the opinion of Mrs. Abramson's hotel expert regarding industry custom may inform the duty analysis, it does not displace controlling law on the issue. *See Estate of Elkerson v. N. Jersey Blood Ctr.*, 776 A.2d 244, 250 (N.J. Super. Ct. App. Div. 2001) (citing *Wellenheider v. Rader*, 227 A.2d 329 (N.J. 1967)).

and then breached it by failing to maintain the equipment. As we understand her argument, the Hotel voluntarily assumed this duty in three ways: (1) by procuring the equipment and keeping it on site; (2) by undertaking to use the equipment to assist Mr. Abramson; and (3) by advertising that such equipment was located on its premises.

Because the Hotel did not breach its duty as innkeeper, any liability would have to stem from its voluntary undertaking to provide assistance, as outlined in § 324 of the Restatement (Second) of Torts:

> One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
> (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or
> (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

New Jersey's Good Samaritan Act, N.J.S.A. § 2A:62A-1, however, shields from civil liability volunteers who, in good faith, render care at the scene of an emergency, even if they do so unreasonably. *Lundy*, 34 F.3d at 1180. Although the Act does not apply when there was a preexisting duty that was breached, we have already determined that issue against Mrs. Abramson. *See id.* (holding that the preexisting duty exception does not apply "where the preexisting duty is a limited one and the alleged negligence is the failure to provide a level of assistance beyond that required by the preexisting duty"). Moreover, there is no allegation much less evidence of any bad faith. As the District Court correctly determined, Appellees are immunized from any liability the Hotel might

9

have incurred by undertaking to procure medical equipment or assist Mr. Abramson.[5]

Finally, we reject, without the need for much discussion, Mrs. Abramson's claim that she booked her room in reliance on the understanding that the Hotel had state-of-the-art medical services in case of emergency. She does not assert a breach of contract or fraud claim, but rather argues that the Hotel created a reasonable expectation that this equipment would be available, resulting in a legal duty to maintain it in good working order. Mrs. Abramson cites neither case law nor evidence to support her claim.

### III. CONCLUSION

We will affirm the order of the District Court.

---

[5] Mrs. Abramson does not claim that the lack of oxygen in the tank and lack of charge in the AED caused harm to her husband; rather, she argues, they failed to save him. Accordingly, even aside from the Good Samaritan Act, there would be no liability.