ROWE, J.
Appellant, Crystal Sells, as a personal representative of her husband’s estate, challenges the trial court’s order granting Appellee’s, CSX Transportation, Ine.’s (“CSX’s”), motion to set aside the jury’s verdict and denying her motion to set aside the jury’s finding of comparative negligence. We affirm the trial court’s entry of directed verdict for three reasons. First, Appellant failed to establish that CSX had a duty to take preventative measures to guard against an employee suffering from cardiac arrest. Second, Appellant failed to establish that CSX’s failure to procure prompt medical assistance contributed in any way to the employee’s death. Third, although CSX, through its employees, has a duty to render basic first aid to seriously ill or injured employees, this duty does not require CSX to compel its employees to administer medical care in the form of life-saving techniques that require training and/or certification.
I. Facts
In August 2006, Larry Sells was working as a conductor and Dick Wells was working as an engineer for CSX. They were conducting switch operations, which required Sells to exit the train and manually operate a switch to change tracks, in a rural area of Clay County, Florida. After he exited the train, Sells suffered cardiac arrest. Wells discovered Sells about two minutes after the attack. Pursuant to company policy and in compliance with federal regulations prohibiting employees from using cell phones while operating a train, Wells contacted CSX’s dispatcher via the train’s radio system. Because of the dispatcher’s inability to communicate Sells’ exact location, the EMTs’ arrival was delayed by thirteen to fifteen minutes. In total, it took the EMTs approximately thirty-five minutes to reach Sells, at which point there was nothing they could do to save his life.
Appellant sued CSX under the Federal Employers Liability Act (“FELA”), alleging that CSX’s negligence caused Sells’ death. She alleged that CSX owed a duty to provide Sells with a reasonably safe workplace and that it breached that duty by failing to take reasonable measures to ensure that Sells received prompt, timely, and adequate medical attention; by failing to provide reasonably safe equipment, in that CSX failed to equip its trains with automated external defibrillator’s (“AEDs”); by failing to train Sells’ coworkers in cardiopulmonary resuscitation (“CPR”); and by failing to timely call for emergency personnel after Sells collapsed.
The case proceeded to trial and the jury returned a verdict in favor of Appellant, *32 finding that CSX was negligent and that Sells was 45% comparatively negligent. Both parties filed post-trial motions. Appellant asked the trial court to set aside the jury’s comparative negligence finding. CSX asked the trial court to set aside the verdict and enter judgment in accordance with its motion for directed verdict made at trial. The trial court granted CSX’s motion and set aside the verdict. The trial court concluded as a matter' of law that CSX had no duty to take actions in anticipation of the possibility that Sells might suffer cardiac arrest and that Appellant failed to provide any evidence from which a jury could reasonably conclude that CSX’s response to Sells’ cardiac arrest caused or contributed to his death.[1] This appeal follows.
II. Motion for Directed Verdict
Appellant argues that the trial court erred in granting the motion for directed verdict for two reasons.[2] First, Appellant argues that the trial court erred in finding that CSX had no duty to take preventive actions in anticipation of one of its employees suffering cardiac arrest. Second, Appellant argues that the trial court erred in finding that there was no evidence from which a reasonable jury could conclude that CSX’s response to the emergency caused or contributed to Sells’ death. Both of these arguments flow from a railroad’s duty to provide the employee with a reasonably safe workplace. See Lynch v. Ne. Reg’l Commuter R.R. Corp., 836 F.Supp.2d 620 (N.D.Ill.2011); Foerman v. Seaboard Coast Line R.R. Co., 279 So.2d 825, 827 (Fla.1978); Randall v. Reading Co., 344 F.Supp. 879 (M.D.Pa.1972).
With respect to providing compensation for workplace injuries, the obligations of railroads differ from those of the majority of other employers in the United States. The workers’ compensation laws that cover virtually all other industries provide compensation to injured employees on a no-fault basis. However, under FELA, being injured on the job does not automatically entitle an employee of a railroad to compensation; instead, compensation is awarded only if the employer’s negligence caused the injury, and compensation must be reduced to the extent of the employee’s own negligence. 45 U.S.C. §§ 51, 53. FELA provides, “Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agent, or employees of such carriers....” 45 U.S.C. § 51. In other words, under FELA, a railroad is responsible for its employees’ injuries or death caused in whole or in part by the railroad’s negligence. CSX Transp., Inc. v. McBride, — U.S.-, 131 S.Ct. 2630, 2634, 180 L.Ed.2d 637 (2011). To establish a claim under FELA, the plaintiff must prove duty, breach of duty, foreseeability, and causation. Fulk v. Ill. Cent. R.R., 22 F.3d 120, 124 (7th Cir.1994); Moody v. Boston & Maine Corp., 921 F.2d 1, 3 (1st Cir.1990). More specifically, to prove a claim that the railroad failed to provide an employee with a safe workplace, “the worker must establish that he became ill *33 at work, that without prompt medical treatment he faced death or serious bodily harm, that the employer had notice of his illness, that the employer failed to furnish prompt medical attention, and that his death or injury resulted in whole or in part from the employer’s delay in response.” Pulley v. Norfolk S. Ry. Co., Inc., 821 So.2d 1008, 1014-15 (Ala.Civ.App.2001).
A. CSX’s Duty to Take Preventative Measures
First, we address whether CSX had a duty to make AEDs[3] available to its employees, to train its employees to use AEDs, and/or to train its employees in CPR. The existence of a duty is a question of law that must be decided by the trial court, not the jury. Fulk, 22 F.3d at 125. As recently acknowledged by our supreme court, there are four sources of duty: “(1) statutes or regulations; (2) common law interpretations of those statutes or regulations; (3) other sources in the common law; and (4) the general facts of the case.” Limones v. Sch. Dist. of Lee County, 161 So.3d 384, 389 (Fla. Apr. 2, 2015). The duty in this case arises from the common law. Under FELA, an ■ employer has a duty to exercise reasonable care in providing a reasonably safe workplace, reasonably safe conditions in which to work, and reasonably safe tools and equipment. Beeber v. Norfolk S. Corp., 754 F.Supp. 1364, 1368 (N.D.Ind.1990). As part of tile duty to provide a safe workplace, the employer is required to procure medical aid and assistance for an employee when, to the employer’s knowledge, the employee becomes seriously ill and unable to care for himself. S. Pac. Co. v. Hendricks, 85 Ariz. 373, 339 P.2d 731, 733 (1959); Szabo v. Penn. R.R. Co., 132 N.J.L. 331, 40 A.2d 562, 563 (N.J.1945). “[T]he duty arises out of strict necessity and urgent exigency. It arises with the emergency and expires with it.” Hendricks, 339 P.2d at 733 (citing Szabo, 40 A.2d at 563); Randall, 344 F.Supp. at 884 (holding that whether the railroad had a duty to render emergency medical aid turned on whether the railroad knew or should have known that the employee had been seriously injured). An employer is not required to take preventive actions in anticipation of an employee falling ill or becoming injured. Wilke v. Chicago Great W. Ry. Co., 190 Minn. 89, 251 N.W. 11, 13 (1933) (holding that an employer is not required to anticipate that the physical health and ability of an employee to care for himself while performing his work duties would suddenly cease). Thus, long-standing case law establishes that while CSX had to procure prompt emergency medical treatment for Sells once it knew that he was seriously ill, it did not have a duty to take anticipatory measures to prevent such emergency situations. Szabo, 40 A.2d at 563; Wilke, 251 N.W. at 13. FELA “does not make the employer the insurer of the safety of his employees while they are on duty.” Ellis v. Union Pac. R.R. Co., 329 U.S. 649, 653, 67 S.Ct. 598, 91 L.Ed. 572 (1947).
While there are no cases specifically addressing whether, pursuant to FELA, a railroad is required to provide AEDs or to train its employees to administer CPR or AEDs, Florida courts have previously addressed this issue in the context of the duty owed by a property owner to an invitee and the duty owed by a school to its student under the common law.[4] See *34 L.A. Fitness Intern., LLC v. Mayer, 980 So.2d 550, 558 (Fla. 4th DCA 2008); Limones, 161 So.3d at 393. In L.A. Fitness, the Fourth District concluded that a business owner satisfied the legal duty to aid a patron experiencing a medical emergency by summoning medical assistance within a reasonable time. Id. at 558. The appellant argued that the fitness center was negligent for failing to administer CPR, failing to have an AED on its premises and to use it on the deceased, and failing to properly train its employees in the handling of medical emergencies. Id. at 552. The Fourth District declined to extend the property owner’s duty to include providing medical care or medical rescue services, such as performing CPR or administering an AED. Id. The court also held that there was -no common law duty that required a business to have an AED on its premises. Id. at 561.
In Limones, the supreme court held that it was for the jury to decide whether the school breached its duty to supervise its students when it failed to administer an AED on a student after he collapsed during a high school soccer game. 161 So.3d at 387. The supreme court based its decision on the fact that there is a special relationship between schools and their students due to the mandatory education of children and the fact that schools stand in the place of parents during the school day and school-sponsored activities. Id. at 390. This special relationship imposes a duty on teachers and other school employees to reasonably supervise students during all school-sponsored activities. Id. Florida courts have recognized several specific duties to student athletes, including the duty “to take appropriate measures after a student is injured to prevent aggravation of the injury.” Id. at 390. The court concluded that it was for the jury to determine whether the school’s employees breached this duty under the particular facts of this case. Id.
The supreme court distinguished their holding from the Fourth District’s holding in L.A Fitness that a health club’s duty to an adult customer was' limited to reasonably summoning emergency responders for a customer in cardiac distress. Id. at 391. The court recognized that the relationship between an adult customer and a health club was far different from the relationship between a student and school board officials. Id. at 392. “Despite the fact that business proprietor-customer and school district-student relationships are both recognized as relationships, these relationships are markedly different. We initially note that the proprietor-customer relationship most frequently involves two adult parties, whereas the school-student relationship usually involves a minor. Furthermore, the business invitee freely enters into a commercial relationship with the proprietor.” Id. The same distinction applies to this case. The relationship between an employer and an employee.is more similar to the relationship between a business and a customer than it is to the relationship between a school and a student. This case does not involve a jury question because, as in L.A. Fitness, CSX’s duty was limited to summoning medical assistance once it learned that its employee was injured.
The dissent attempts to distinguish the business-invitees cases by noting *35 that all of the businesses were “readily accessible by EMTs, as they were located in populated areas.” However, accessibility has never been a factor considered when examining the duty to provide a reasonably safe workplace. See De Zon v. American President Lines, Ltd., 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065 (1943). In De Zon, the Supreme Court held that a ship owner had no duty to “carry a physician” on the ship, even though the ship owner was required to take reasonable measures to transport an ill or injured seaman to a physician. Id. at 668, 63 S.Ct. 814. The supreme court’s conclusion that a ship that was scheduled for a sixty-day voyage was not required to carry a doctor onboard would be illogical if accessibility to medical care was to be considered when examining the duty to provide a reasonably safe workplace. See also, Olsen v. Am. S.S. Co., 176 F.3d 891, 895 (6th Cir.1999); Carleno v. Marine Trans. Lines, Inc., 317 F.2d 662, 665 (4th Cir.1963).
Because CSX’s duty to provide medical assistance arose only when the emergency occurred, the trial court properly determined that CSX had no duty to take preventative measures in anticipation of an employee suffering cardiac arrest.[5] Randall, 344 F.Supp. at 884. It is axiomatic that if CSX did not have a duty to take preventative measures, then CSX did not have a duty to provide AEDs nor to train its employees in the administration of AEDs or CPR. Thus, we affirm the trial court’s grant of the motion for directed verdict on this issue.
B. CSX’s Duty Once an Emergency Arises
Second, we address Appellant’s argument that she presented evidence from which a reasonable jury could conclude that CSX breached its duty to provide prompt emergency medical treatment to Sells. . Appellant argues that CSX breached this duty in two respects: (1) CSX failed to promptly summon medical assistance once it learned of Sells’ condition; (2) CSX failed to render medical care, to Sells before the EMTs arrived. We agree that CSX failed to promptly summon medical treatment; however, Appellant is unable to establish a causal link between this failure and Sells’ death. And although CSX was required to provide Sells with basic first aid while awaiting the arrival of the EMTs, we hold that CSX was under no duty to render medical care during that time.

1. Duty to Summon Medical Assistance

Appellant argues that CSX breached its duty to promptly summon medical assistance when it was unable to convey directions to the EMTs as to Sells’ location and by its delay in calling 911, which resulted in the EMTs’ failure to reach Sells until thirty-five minutes after he went into cardiac arrest. The trial court concluded, and we agree, that Appellant presented no evidence to establish that CSX’s delay in summoning medical assistance caused Sells’ death. In order to create a jury issue on the question of causation in a FELA case, the plaintiff must present evidence that the railroad’s negligence “ ‘played any part, even the slightest, in producing the injury or death for which damages are sought.’ ” Randall, 344 F.Supp. at 883 (M.D.Penn.1972) (quoting Rogers v. Mo. P.R. Co., 352 U.S. 500, 506,77 S.Ct. 443, 1 L.Ed.2d 493 (1957)). *36 While the evidence may be minimal, it must provide the jury with a rational basis for concluding that the railroad’s negligence contributed to the injury or death. Id.
The uncontroverted trial testimony established that, absent any delays, the EMTs could not have arrived on scene until fifteen minutes after Sells went into cardiac arrest. As conceded by counsel at oral argument, the medical testimony conclusively demonstrated that the administration of emergency medical treatment at that point in time, without more, could not have prevented Sells’ death. The dissent argues that no medical expert testified that Sells “had no chance of survival” even if the EMTs’ arrival had not been delayed. This argument not only ignores counsel’s repeated concessions to contrary, but it also ignores the medical testimony presented below. Sells’ family practitioner testified that Sells would have been brain dead after ten minutes due to the lack of professional medical intervention. Appellant’s medical expert testified that brain death begins after four or five minutes, and he testified, within a reasonable degree of medical certainty, that Sells would have been brain dead fifteen minutes after he went into cardiac arrest. He testified, “if Mr. Sells did not get effective CPR and if there was no AED, the great likelihood after 15 minutes is that he would not be able to be resuscitated in a way that would get him back to any kind of reasonable existence.” Finally, the defense’s expert witness testified that Sells’ chances of survival after ten minutes without the provision of trained medical assistance was minimal. Here, even when the evidence is viewed in a light most favorable to Appellant, the evidence established that absent medical intervention, there was no possibility, even under perfect circumstances, of emergency medical help arriving in time to save Sells; therefore, Appellant is unable to demonstrate that any alleged breach was causally related to Sells’ death.[6] See Borda v. E. Coast Ent., Inc., 950 So.2d 488, 490 (Fla. 4th DCA 2007) (quoting Little v. Publix Supermarkets, Inc., 234 So.2d 132, 133 (Fla. 4th DCA 1970) (holding that a motion for directed verdict should be granted when “ ‘the evidence is of such a nature that under no view which the jury might lawfully take of it, favorable to the adverse party, could a verdict for the latter be upheld.’ ”).
This same reasoning applies to Appellant’s argument that CSX should have permitted its employees to directly call 911, instead of radioing dispatch, in the event of an emergency. Even if Wells had directly called 911 after discovering Sells, the *37 EMTs would not have arrived in time to save Sells.[7] Thus, even under the relaxed standard of causation applicable to FELA cases, Appellant failed to establish under these facts that CSX’s alleged breach of its duty to render prompt medical care caused or contributed to Sells’ death. See Crowther v. Consol. Rail Corp., 763 F.Supp.2d 262, 265 (D.Mass.2011) (holding that a FELA plaintiff must show not only that the railroad was negligent, but also that the railroad’s negligence caused or contributed to his injuries).

2. Duty to Render First Aid, Not Medical Care

Appellant argues that CSX’s failure to allow Wells to speak directly with a 911 operator contributed to Sells’ death because the 911 operator would have been able to instruct Wells on how to perform CPR on Sells, which would have extended Sells’ life until the EMTs arrived. She contends that a reasonable jury could have found from the evidence presented that this failure was a breach of CSX’s duty to provide a reasonably safe workplace. We disagree with the contention that the reasonableness of care exercised by CSX was a question of fact that precluded the entry of the directed verdict. Even if the jury made such a finding, the law does not require CSX to provide all emergency medical care that its employees might foreseeably require. See Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1179 (3d Cir.1994).
Here, we are required to examine whether a railroad’s duty to provide prompt medical care encompasses a duty for employers to require their employees to perform CPR under the instruction of 911 operators. Appellant does not cite, nor can we find, any cases addressing this issue in the context of FELA; thus, we look to the common law for guidance. See Norfolk S. Ry. Co. v. Sorrell, 549 U.S. 158, 165-66, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007) (“Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law.”). As discussed above, the special relationship between the railroads and its employees gives rise to a special duty to take affirmative action to aid an injured employee. The Restatement (Second) of Torts describes a common carrier’s duty to aid its passengers, including employees, as follows:
(1) A common carrier is under a duty to its passengers to take reasonable action
(a) to protect them against unreasonable risk of physical harm, and
(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
(2) An innkeeper is under a similar duty to his guests.
(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.
(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.
Restatement (Second) of Torts § 314A. The duty to take reasonable action is further discussed in the comments:
*38 The defendant is not required to take. any action until he knows or has reason to know that the plaintiff is endangered, or is ill or injured. He is not required to take any action beyond that which is reasonable under the circumstances. In the case of an ill or injured person, he will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained. He is not required to give any aid to one who is in the hands of apparently competent persons who have taken charge of him, or whose friends are present and apparently in a position to give him all necessary assistance.
Restatement (Second) of Torts § 314A, cmt. f. As applied to the current situation, this comment demonstrates that CSX’s duty was to summon medical assistance when it learned of Sells’ condition and to take reasonable first aid measures until medical care arrived. See Abramson v. Ritz Carlton Hotel Co. LLC, 480 Fed.Appx. 158, 161 (3d Cir.2012) (relying on comment f to conclude that an innkeeper must only summon medical care and take reasonable first aid measures until medical care arrives). “[T]he duty recognized in § 314A does not extend to providing all medical care that the carrier or innkeeper could reasonably foresee might be needed by a patron.” Lundy, 34 F.3d at 1179.
As observed by the Fourth District, the duty to provide first aid “does not encompass the duty to -perform skilled treatments, such as CPR. ‘First aid requires no more assistance than that which can be provided by an untrained person.’ ” L.A. Fitness, 980 So.2d at 559 (quoting Pacello v. Wyndam Int'l, 2006 WL 1102737, *6 (Conn.Super.2006)). ThFourth District explained that, pursuant to the American Red Cross and the American Heart Association’s Guidelines for First Aid, common first aid treatments include, but are not limited to, calling for help, positioning a victim, ensuring that a seizure victim has an open airway, controlling a victim’s bleeding by applying pressure, applying cold packs to soft-tissue injuries, warming a victim of hypothermia, and removing a drowning victim from the water. Id. While acknowledging that CPR is a commonly known technique, the Fourth District concluded that non-medical employees should not be required to perform it:
Although the procedure for CPR is relatively simple and widely known as a major technique for saving lives, it nonetheless requires training and re-certification. Unlike first responders, for whom performing CPR is routine, non-medical employees certified in CPR remain laymen an<j should have discretion in deciding when to utilize the procedure.
Id.; see also Abramson, 480 Fed.Appx. at 162 (clarifying that “a common understanding of ‘first aid’ does not encompass the use of an oxygen tank or AED.... Rather, ‘first aid’ involves simple procedures that can be performed with minimal equipment and training, such as bandaging and repositioning. CPR ... lies at the outer limit of the term.”); Salte v. YMCA of Metro. Chi. Found., 351 Ill.App.3d 524, 286 Ill.Dec. 622, 814 N.E.2d 610, 615 (2004) (concluding that the use of a defibrillator was “far beyond the type of ‘first aid’ contemplated by” § 314A); Lee v. GNLV Corp., 117 Nev. 291, 22 P.3d 209, 213-14 (2001) (holding that the duty to take reasonable steps to render first aid did not include performing the “Heimlich maneuver” on a restaurant patron who was choking). Accordingly, while CSX may have been obligated to provide general first aid to Sells, even that obligation would not *39 include the duty to require its employees to perform skilled treatment, such as CPR, on an injured co-worker.[8]
Finally, it would be a radical departure from the common law to require employers to ensure that their employees are available, capable, and willing to perform CPR on an injured co-employee while under the instruction of a 911 operator. In fact, “when an employer actually undertakes to furnish aid or assistance to an ill employee, he must exercise reasonable care in rendering such aid and assistance.” Hendricks, 339 P.2d at 733; Wilke, 251 N.W. at 14 (holding that if an employer attempts to care for a sick or injured employee, the employer is liable for the failure to do so without due diligence). Thus, if an employee attempts to respond to a medical emergency but does so inadequately, the employer and the employee may be subject to a claim for having negligently rendered emergency medical services. See L.A. Fitness, 980 So.2d at 560 (“Florida law' requires that an action undertaken for the benefit of another, even gratuitously, be performed in accordance with an obligation to exercise reasonable care.”); Putrino v. Buffalo Athletic Club, 193 A.D.2d 1127, 598 N.Y.S.2d 648 (N.Y.App.Div.), aff'd, 82 N.Y.2d 779, 604 N.Y.S.2d 539, 624 N.E.2d 676 (1993) (personal representative of individual who suffered a fatal heart attack at an athletic club sued, alleging that the club’s employees negligently rendered emergency treatment). Consequently, we hold that CSX did not have a duty to require its employees to perform CPR on another employee under the direction of a 911 operator.[9]
III. Conclusion
For the foregoing reasons, we affirm the trial court’s- grant of CSX’s motion for directed verdict because Appellant failed to establish that CSX had a legal duty to train its employees in the use of CPR and AEDs or to provide its employees with AEDs, and Appellant failed to establish that any alleged breach of CSX’s duty to provide prompt medical attention contributed, in whole or in part, to Sells’ death. Because we affirm the trial court’s grant of the motion for directed verdict, we need not address Appellant’s argument that the trial court erred in denying her motion to set aside the jury’s finding of comparative negligence.
AFFIRMED.
LEWIS, C.J., concurs.
SWANSON, J., dissents with opinion.

. Contrary to the assertion in the dissent, the trial court never concluded that CSX did not have a duty to provide prompt medical treatment to Sells. The court found that Appellant failed to prove causation on this issue.

. A trial court's order directing a verdict is reviewed de novo. Williams v. Washington, 120 So.3d 1263, 1264 (Fla. 1st DCA 2013). A directed verdict will be affirmed only when no reasonable view of the evidence could sustain a verdict in favor of the non-moving party. Id.

. Appellant characterizes these devices as "simple” and easily "administered by anybody even without training." However, the FDA classifies them as medical devices and now requires premarket approval of these devices. 21 C.F.R. § 870.5310.

. FELA is founded on common-law concepts of negligence, except to the extent that it has *34 been modified by the removal of several common-law defenses to liability and by a relaxed standard of causation. Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 543-44, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994); McBride, 131 S.Ct. at 2636. Consequently, common law principles of duty are entitled to great weight in our analysis of this issue. Gottshall, 512 U.S. at 544, 114 S.Ct. 2396.

. This case is distinguishable from the decision in Bridgeman v. Terminal Railroad Association of Si. Louis, 195 Ill.App.3d 966, 142 Ill.Dec. 405, 552 N.E.2d 1146 (1990). In Bridgeman, the employee died as a result of acute myocardial infarction. Id. 142 Ill.Dec. 405, 552 N.E.2d at 1148. The autopsy revealed that the employee was alive for a minimum of thirty minutes from the onset of the attack until death, but medical help was not summoned until forty-five minutes after the employee was discovered. Id. Importantly, the evidence established that the closest ambulance was approximately eight blocks away from the employee’s location and that a trauma center was approximately one minute away. Id. 142 Ill.Dec. 405, 552 N.E.2d at 1147. Based on these facts, the Illinois Appellate Court concluded that the evidence was sufficient to sustain the jury's conclusion that the railroad was at least partially liable for the employee’s death. Here, the evidence established that it would have taken an ambulance at least fifteen minutes to reach Sells' location and that Sells would not have survived longer than ten minutes without medical intervention. Thus, Bridgeman is factually distinguishable from this case because there was no evidence in the current case that CSX could have summoned medical help in time to save Sells’ life.

. Appellant's argument also ignores the fact that, in addition to CSX’s policy prohibiting their use, there is a federal regulation requiring railroad employees to turn off all personal electronic devices when on a moving train, when any member of the crew is on the ground or riding rolling equipment during a switch operation, or when any railroad employee is assisting in preparation of the train for movement. 49 C.F.R. § 220.305.

. Imposing a duty on employers to require its employees to render medical treatment implicates complex labor and collective bargaining issues. This is especially true as there is no law requiring railroads to train its employees in life-saving measures, and there is no mechanism in place to indemnify and hold harmless those employees that do attempt to render medical care.

. This opinion should not be read as an attempt to discourage employees who have proper training or who feel comfortable performing CPR from assisting a fellow employee in an emergency situation.